**Sandra O. BERNHARD, Plaintiff– Appellee and Cross–Appellant,**

v.

**FARMERS INSURANCE EXCHANGE, Defendant–Appellant and Cross– Appellee.**

**No. 92CA1790.**

Colorado Court of Appeals, Div. III.

April 21, 1994.

Rehearing Denied May 26, 1994.

Certiorari Granted Nov. 29, 1994.

Law Firm of Kevin S. Hannon, Kevin S. Hannon, Denver, for plaintiff-appellee and cross-appellant.

Hall & Evans, L.L.C., Eugene O. Daniels, Malcolm S. Mead, Denver, for defendant-appellant and cross-appellee.

Law Office of Steven Taffet, Steven L. Taffet, Denver, for amicus curiae Colorado Lawyers Ass'n.

Opinion by Judge CRISWELL.

The defendant, Farmers Insurance Exchange (Farmers), appeals from the judgment entered on a jury verdict which awarded its insured, plaintiff Sandra O. Bernhard, damages for Farmers' bad faith refusal to settle a personal injury tort claim asserted by third parties against the insured and from the court's post-verdict award of attorney fees to the insured. Farmers argues that the trial court erred in allowing the jury to assess damages that occurred to the insured

after the date that Farmers made a "full limits" offer to settle the tort claims being asserted, in refusing to admit the insured's agreement with the third-party claimants, and in awarding the insured her attorney fees incurred in the prosecution of this action. In addition, the insured cross-appeals, asserting that the trial court erred in refusing to award additional attorney fees to her. We reverse the award of attorney fees, but we otherwise affirm.

The insured, while driving her vehicle, struck another vehicle, seriously injuring its two occupants. She had a liability insurance policy issued by Farmers, which had limits of $100,000 per person and $300,000 per accident for bodily injury benefits.

About three months after the accident, the two occupants of the vehicle struck by the insured sued the insured and her employer, requesting compensatory damages in excess of the Farmers' policy limits, as well as exemplary damages. Farmers advised the insured that the claims exceeded the policy limits, that the policy provided no coverage for exemplary damages, and that the insured had the right to engage her own counsel to aid in the defense of the action. The insured did so.

Substantially simultaneously with the commencement of that suit, counsel for the injured parties offered to settle their claims against the insured in return for payment of the policy limits, i.e., a payment of $100,000 to each of the two plaintiffs, or $200,000 in total. Counsel selected by Farmers to represent the insured in that litigation was able to obtain an extension of time within which to respond to the offers of settlement made by the plaintiffs, and in mid-October 1986, about five and one-half months before the date scheduled for the trial of the two claims, counsel offered to pay the full policy limits of $100,000 to one of the plaintiffs but only $10,000 to the second.

This offer was rejected, and in late 1986, the depositions of the two plaintiffs were taken. Thereafter, in early February 1987, Farmers' offer for the second plaintiff was increased to $45,000, and in mid-February, about six weeks prior to the scheduled trial

date, Farmers offered to pay the full policy limits of $100,000 to each of the plaintiffs.

While this offer was identical to the one made by the plaintiffs less than a year previously, it was rejected. Instead, plaintiffs offered to settle the case for a total of $230,000 (rather than $200,000). The additional amount requested was based, at least in part, upon the fact that the written contingency fee agreement between the plaintiffs and their counsel called for an increase in fees as of the 45th day prior to any scheduled trial and Farmers' offer was not received prior to that date.

The subsequent trial of the personal injury case resulted in verdicts against the insured and her employer (who was insured by another carrier) substantially in excess of the combined policy limits. After a portion of the claim for one of the plaintiffs was compromised and the full limits of both policies were paid in satisfaction of the judgment, there was still some $82,000 owing on the judgment.

The insured and the plaintiffs in that action then entered into an agreement pursuant to which the insured agreed to assert a bad faith claim against Farmers and to pursue such claim through all available appeals and the plaintiffs agreed that, if the insured exhausted all her remedies as she agreed to do, no attempt to execute on the judgment would be undertaken. Out of any final recovery, the plaintiffs were to receive the first $82,000, and the insured was to receive any excess.

This action followed, and upon trial, the jury returned a verdict awarding the insured the sum of $108,911.30, of which amount some $27,224.85 represented attorney fees incurred by the insured in prosecuting this action. The trial court reduced the verdict by this latter amount, leaving a verdict in the amount of some $81,700. Thereafter, however, the trial court, in post-trial proceedings, awarded the insured the sum of $32,000, which also represented the attorney fees incurred by her in the prosecution of this action; such fees were not incurred by her in engaging her own counsel with respect to the personal injury action.

Before us, Farmers concedes that, considering the actions and inactions of its agents and employees between the time that the initial personal injury complaint was filed in March 1986 and the date that an offer to pay the full policy limits was made in February 1987, a reasonable fact finder could determine that it was negligent in failing to offer to pay the full policy limits prior to the latter date. Hence, it does not assert that the jury verdict finding it liable is unsupported. It argues, nevertheless, that the court committed three errors which affected the amount of the judgment entered against it.

## I.

Farmers argues, first, that the trial court erred in refusing to rule that, because Farmers offered its full policy limits in February 1987, any damages accruing to the insured thereafter could not, as a matter of law, have been caused by Farmers' previous actions, even if those actions were unreasonable. While we agree that an offer to pay full policy limits may have the effect of limiting the damages that otherwise might result from a carrier's previous actions, we disagree that a determination can be made, as a matter of law, that damages occurring after the date of the offer here were not caused by Farmers' previous negligence.

Farmers concedes, and we agree, that, if an insurance carrier acts unreasonably, and if injury results therefrom, then any claim based upon that unreasonable act accrues at the time of the act. Hence, a later tender of the full policy limits will not *excuse* any prior unreasonable actions. W. Shernoff, S. Gage, & H. Levine, *Insurance Bad Faith Litigation*, § 503[2] at 5–10 (1992) ("The insurer is not *relieved* from liability for bad faith merely because payment of the claim was eventually made...." (emphasis supplied)). *See also Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984) (actual exposure to excess verdict not necessary for assertion of bad faith claim; claim accrues upon unreasonable failure to pay).

However, the act of tendering the full limits is itself evidence upon the question whether the carrier's course of action has been reasonable, and such tender may, under appropriate circumstances, negate the conclusion that the carrier is guilty of bad faith. *See Adduci v. Vigilant Insurance Co.*, 53 Ill.Dec. 854, 98 Ill.App.3d 472, 424 N.E.2d 645 (1981) (where carrier tendered full policy limits at time of pre-trial conference, which tender was not accepted because of increase in rate of attorney fees at that time, carrier was not, as a matter of law, guilty of unreasonable action); *Bailey v. Hardware Mutual Casualty*, 322 F.Supp. 387 (W.D.La.1969), *aff'd*, 439 F.2d 763 (5th Cir.1971).

Further, because a carrier is under no duty to pay more than the amount required to be paid under the terms of the policy, once a tender of such amount is made, it has fulfilled its duty, and it cannot be said that its later actions were unreasonable. There is, therefore, nearly universal agreement that such a carrier is liable only for the damages that are caused by its earlier actions; damages to the insured that occur after the tender of the full limits and which are not caused by the carrier's previous unreasonable actions, are not recoverable. *Berry v. United of Omaha*, 719 F.2d 1127 (11th Cir.1983) (applying Alabama law); *Schlauch v. Hartford Accident & Indemnity Co.*, 146 Cal.App.3d 926, 194 Cal.Rptr. 658 (1983); *Knobloch v. Royal Globe Insurance Co.*, 38 N.Y.2d 471, 381 N.Y.S.2d 433, 344 N.E.2d 364 (1976). *See generally Insurance Bad faith Litigation*, *supra*, § 503[2] at 5–10 ("[E]ventual payment of the claim may serve to mitigate damages incurred as a result of the insurer's bad faith.").

However, particularly given Farmers' concession here that the evidence adduced was legally sufficient to sustain the jury's findings of liability, we cannot conclude, as did the court in *Adduci v. Vigilant Insurance Co.*, *supra*, that Farmers was not guilty of bad faith before making the tender of the full policy limits.

Moreover, the question whether particular damages have been caused by a party's wrongful acts is generally a question of fact. *Largo Corp. v. Crespin*, 727 P.2d 1098 (Colo.1986).

Here, then, the question presented was whether the trial of the personal injury case, which resulted in excess judgments and emotional suffering by the insured, was caused solely by the personal injury plaintiffs' refusal to accept the tendered policy limits or whether that trial was the result, at least in part, of Farmers' earlier unreasonable actions. Although it is true that that trial and the damages that it caused came after Farmers' tender of the full limits of its policy, we cannot say that such temporal succession means that those latter damages were not contributed to by Farmers' earlier acts.

No personal injury plaintiff is ever under a duty to a defendant to accept a tender of the full limits of a liability policy covering the loss, and such a plaintiff may, in any case, elect to proceed to trial of the claim. If such a plaintiff elects to proceed to trial after a timely and proper offer is made, the defendant's liability carrier will not be responsible for any resulting injury to its insured. If, however, the carrier unreasonably delays in making such offer, under circumstances that demonstrate that such an offer would be appropriate, and a later full limits offer is refused, the carrier may be held responsible if plaintiff's refusal of the offer can reasonably be looked upon as a natural and probable consequence of the carrier's earlier unreasonable actions.

Here, the jurors were instructed that, in order to find for the insured, they were required to determine that Farmers' actions "caused" the insured's damages, *i.e.*, that those actions "in natural and probable sequence produced the claimed injury." They were also instructed that Farmers' offer of its full policy limits did not "preclude" the insured from asserting a claim based upon its prior bad faith actions. Farmers did not object to either of these instructions, nor did it request any additional instruction to advise the jurors of the extent of its duty to pay under its policy or that no action taken by Farmers *after* its tender of its full policy limits could be considered as the basis for any finding of bad faith.

Given these circumstances, we are convinced that the trial court committed no error in refusing to rule, as a matter of law,

that Farmers' actions did not cause any damage occurring after it made its full limits offer. While a reasonable fact finder could have reached this conclusion, the evidence, in our view, would not have compelled such a finding.

## II.

Farmers also argues that the trial court erred in refusing to admit into evidence the settlement agreement between the insured and the personal injury plaintiffs, which ultimately had the effect of relieving the insured of responsibility for the excess judgment, so as to rebut the insured's claim of permanent mental suffering resulting from the trial of the personal injury claims and the entry of such judgment. We conclude, however, that this error, if such it be, was harmless.

The trial court reluctantly excluded this document as evidence based upon *Bashor v. Northland Insurance Co.*, 29 Colo.App. 81, 480 P.2d 864 (1970), *aff'd on other grounds*, 177 Colo. 463, 494 P.2d 1292 (1972). There, as here, an insured entered into an agreement with a personal injury claimant, who had recovered a judgment for an amount in excess of the policy limits, providing that the insured would not be responsible for the excess judgment that had entered and that the personal injury claimant would receive a substantial portion of any proceeds resulting from the insured's prosecution of a bad faith claim against his liability carrier. In holding that the insured had standing to pursue such a claim, the division opined that such agreement was "irrelevant to the issues between" the parties. *Bashor v. Northland Insurance Co.*, 29 Colo.App. 81 at 87, 480 P.2d 864 at 867.

Farmers argues that this general statement from *Bashor* cannot be applied to the circumstances of this case. Here, the insured presented evidence from which the inference could be drawn that she had sustained permanent emotional upset that resulted, in part, from her worry over the amount of the judgment that had been entered against her. Given this testimony, Farmers insists that it was entitled to dem-

onstrate to the jury that, as a result of the agreement between the insured and the personal injury plaintiffs, there would be no cause for such concern in the future.

However, the jury award in this case (after the trial court struck that portion representing attorney fees) totalled only some $81,700. The amount of this award, the answer the jurors returned to the special interrogatory submitted to them, and the note sent by them to the court before they returned their verdict, all make clear that the amount of their award was intended to reimburse the insured only for the amount of the excess judgment entered against her. These materials are clear evidence that the jury verdict awarded the insured nothing for emotional suffering or for any other item of damage.

Given this circumstance, therefore, the refusal of the trial court to admit the agreement caused Farmers no harm; even if it was error, it was not prejudicial.

### III.

We do agree with Farmers, however, that the trial court erred in awarding to the insured the attorney fees incurred in this action to prosecute the instant bad faith claim.

■ As a general rule, attorney fees incurred in the prosecution of an action are not recoverable in that action, unless a statute, court rule, or contract authorizes their assessment. *Bunnett v. Smallwood,* 793 P.2d 157 (Colo.1990) (even though agreement not to sue is designed to save litigation costs, attorney fees incurred as a result of breach of such agreement are not recoverable). Consequently, in an action to enforce an indemnity contract, fees incurred in *that* action are not recoverable, although the fees previously incurred in defending against the claim that was indemnified against may be. *Davis v. Gourdin,* 831 P.2d 497 (Colo.App.1992).

■ A liability insurance policy is, of course, a species of indemnity contract. Nevertheless, if an insured under such a policy is required to engage in litigation in order to obtain *the benefits provided by that policy, i.e.,* to require the carrier to defend against the action or to indemnify the insured against any judgment that may be entered (up to the limits of the policy), some courts have held that the fees incurred by the insured in such litigation are recoverable.

■ Such recovery is sometimes justified by a policy provision requiring the carrier to reimburse the insured for the expense of any requested action. *See Allstate Insurance v. Robins,* 42 Colo.App. 539, 597 P.2d 1052 (1979) (insured's fees incurred in successful defense of carrier's declaratory judgment action contesting coverage under policy are recoverable). *But see Allstate v. Orban,* 855 P.2d 9 (Colo.App.1992) (*cert. withdrawn,* March 14, 1994) (fees not recoverable in declaratory judgment action in which court determines that policy does not provide coverage).

■ Alternatively, even in the absence of such a policy provision, if an insurance carrier who has an obligation to defend against a third party claim violates that obligation, the insured may recover both the fees incurred in defending against the claim *and* those arising from pursuing a claim against the carrier for reimbursement of such litigation expenses. Such result is grounded upon the consideration that, without an award of fees in such instances, the insured would not receive the full benefits that were due under the policy. *See Wheeler v. Reese,* 835 P.2d 572 (Colo.App.1992); *Sims v. Sperry,* 835 P.2d 565 (Colo.App.1992); *Hedgecock v. Stewart Title Guaranty Co.,* 676 P.2d 1208 (Colo.App.1983). *Contra Rhodes v. Copic Insurance Co.,* 819 P.2d 1060 (Colo.App.1991) (decision in *Bunnett v. Smallwood, supra,* prevents award of fees to insured for successful prosecution of declaratory judgment action to require carrier to defend and indemnify).

However, while the courts of this state have not yet passed upon the precise issue, other jurisdictions have been substantially uniform in drawing a distinction between fees incurred by an insured either to obtain the benefits due *under the policy* or in litigation with a third party and those incurred in prosecuting a bad faith claim against the carrier to obtain damages that are not a part of the policy benefits.

In *Brandt v. Superior Court,* 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796 (1985), cited with approval in *Farmers Group, Inc. v. Trimble,* 768 P.2d 1243 (Colo.App.1988), and relied upon by the insured here, the court was careful in drawing this important distinction. *Brandt* was an action by an employee who was one of the beneficiaries of a group disability policy provided by his employer. The employee became totally disabled, but the insurance carrier refused to pay any benefits. The employee thereupon engaged counsel who filed a complaint, alleging both a contract claim, asking to be paid the benefits due under the policy, and a tort claim, seeking additional damages based upon the carrier's bad faith.

Consistent with the results in *Wheeler v. Reese, supra; Sims v. Sperry, supra;* and *Hedgecock v. Stewart Guaranty Title Co., supra,* the *Brandt* court held that the insured was entitled to recover any attorney fees incurred in the prosecution of the contract claim to obtain the benefits payable under the policy. It denied the insured the right to recover any fees attributable to the prosecution of the bad faith claim, however, using these words:

> These fees [to recover policy benefits] must be distinguished from recovery of attorney fees *qua* attorney fees, *such as those attributable to the bringing of the bad faith action itself.*
>
> . . . .
>
> Fees attributable to obtaining any portion of the plaintiff's award which exceeds the amount due under the policy are not recoverable.

37 Cal.3d at 817, 819, 210 Cal.Rptr. at 213, 215, 693 P.2d at 798, 800 (emphasis supplied).

A similar distinction was drawn by the court in *Andrews v. Central Surety Insurance Co.,* 271 F.Supp. 814 (D.S.C.1967), *aff'd sub nom.,* 391 F.2d 935 (4th Cir.1968) (applying South Carolina law).

Indeed, we have found no case that has authorized the recovery of attorney fees that were incurred in the prosecution of the bad faith claim itself.

■ We recognize that, to the extent that a carrier's bad faith has caused an insured to engage counsel either to obtain the benefits provided by the policy or to defend against a claim that the policy requires the carrier to defend against, the fees incurred by the insured for such purposes are recoverable, as damages, in a later action based upon the carrier's bad faith. *Farmers Group, Inc. v. Trimble, supra.* See also *Feit v. Donahue,* 826 P.2d 407 (Colo.App.1992) (vendees who engaged attorney to attempt to rectify zoning violation fraudulently concealed by vendors entitled to recover fees for such services). That principle, however, does not authorize the award of attorney fees for the prosecution of the bad faith tort claim itself. And, because the fees awarded here were those incurred for this latter purpose, that portion of the judgment must be reversed.

IV.

From the above analysis, it follows that there is no merit to that part of the insured's cross-appeal that complains of the trial court's refusal to award the attorney fees incurred during a previous portion of the instant proceedings that resulted in a mistrial. The insured also asserts, however, that the trial court erred in refusing to award her the attorney fees she personally incurred during the course of the preceding trial of the personal injury claim against her. Given the circumstances here, we disagree.

■ We agree, as we have said, that attorney fees incurred in litigation with a third party, resulting from an insurer's breach of the covenant of good faith, are generally recoverable, as damages, in a later action against the carrier. *Farmers Group, Inc. v. Trimble, supra.*

■ However, because such attorney fees are assessed as damages, and they are not incurred during the course of the litigation against the carrier, they must be considered and assessed by the fact-finder. At least in the absence of some stipulation or court order to the contrary, they cannot be awarded by the court on a post-trial basis. *See Ferrell v. Glenwood Brokers, Ltd.,* 848 P.2d 936 (Colo.1993). Unlike attorney fees which are incurred in the litigation in which they are to be assessed, which relate to services rendered during the course of that litigation, and which may be awarded as costs, *Roa v. Miller,* 784 P.2d 826 (Colo.App.

1989), attorney fees incurred in a previous lawsuit as a direct consequence of a carrier's bad faith breach must be proven as a part of plaintiff's substantive claim. *Ferrell v. Glenwood Brokers, Ltd., supra.*

Here, although the insured listed the attorney fees and other expenses incurred by her during the course of the personal injury action as damages in her pre-trial disclosure certificate, she presented no evidence upon the subject during the course of the trial. Further, while the court specifically reserved the question of the award of fees incurred during the instant litigation for post-trial consideration, which was consistent with the rule of *Ferrell v. Glenwood Brokers, Ltd., supra,* that reservation did not extend to the fees incurred in the personal injury action. Likewise, this record contains no evidence of any stipulation between the parties to reserve this issue for later consideration.

Under these circumstances, therefore, because the insured failed to present this evidence to the jury, she waived her right to recover such damages.

That portion of the judgment awarding attorney fees to the insured is reversed. In all other respects, the judgment is affirmed.

DAVIDSON and TAUBMAN, JJ., concur.