**Doris A. WATERS, Petitioner,**

v.

**THE DISTRICT COURT FOR THE SEVENTEENTH JUDICIAL DISTRICT, State Of Colorado; and The Honorable John J. Vigil, one of the Judges thereof, Respondents.**

No. 96SA372.

Supreme Court of Colorado,
En Banc.

April 7, 1997.

Joe Pickard & Associates, P.C. Doris A. Waters, Denver, Pro Se.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, Elizabeth A. Weishaupl, Assistant Attorney General, State Services Section, Denver, for Respondents.

Justice MULLARKEY delivered the Opinion of the Court.

The petitioner, Doris A. Waters, Esq. (Waters), filed this original proceeding pursuant to C.A.R. 21 seeking a writ of mandamus compelling the respondent trial court (respondent court), the Honorable John J. Vigil, to authorize and order payment of certain attorney fees and costs to Waters. Waters seeks these funds to compensate her for her work as court-appointed counsel in a dependency and neglect proceeding. She also seeks payment for the attorney fees and costs she has incurred in bringing this original proceeding.

We issued a rule to show cause why the relief requested by Waters should not be granted. We now hold that the respondent court abused its discretion when it rescinded her appointment as counsel and denied her

all of her attorney fees and costs. Accordingly, we make the rule absolute and direct the respondent court to conduct a hearing to reconsider the indigency status and eligibility for court-appointed counsel of Waters's client and to order payment of Waters's attorney fees and costs consistent with this opinion. However, we find no basis to award attorney fees and costs to Waters for the expense of bringing this original proceeding.

## I.

On or about January 15, 1995, Waters filed a "Motion for Court Appointed Attorney," in accordance with section 19–3–202, 8B C.R.S. (1996 Supp.),[1] of the Children's Code, on behalf of a respondent father, R.F., in a dependency and neglect proceeding. That proceeding began in early January 1995, when the Adams County Department of Human Services (ACDHS) filed a petition in dependency and neglect regarding R.F.'s minor child.[2]

On January 23, 1995, the trial court in the dependency and neglect proceedings, the Honorable John E. Popovich, Jr., granted Waters's motion for court appointment and found in part:

1. [R.F.] is indigent, and without funds to continue to retain the services of private counsel.

2. Doris A. Waters, Esq., is appointed effective January 6, 1995, as counsel for [R.F.].

3. Doris A. Waters, Esq., shall be paid by the State at the rates established for Court appointed counsel in dependency and neglect proceedings.

Waters represented R.F. as his court-appointed counsel for the next one and one-half years. At several points over the course of the proceedings, R.F. provided the trial court with information regarding his employment and financial status. In particular, on November 15, 1995, at the court's request, R.F. filed an affidavit regarding his financial status. In January 1996, Judge Popovich completed his rotation in juvenile court, and the Honorable John J. Vigil began presiding over the proceedings at issue. On February 2, 1996, R.F. attended a hearing on the issue of child support, at which time the respondent court specifically found R.F.'s gross monthly income to be $1,078.00 for the purposes of computing child support. On or about April 14, 1996, Waters submitted a "Motion and Order for Payment of Excess Attorney Fees" for all the fees and costs incurred from the date of her appointment up to March 26, 1996. She submitted an itemized billing statement with her motion and requested a total sum of $2,855.04. At the request of the clerk of the court, on May 16, 1996 Waters resubmitted to the court a copy of R.F.'s financial affidavit dated November 15, 1995.

On May 21, 1996, the respondent court issued an order denying Waters's motion for payment of excess fees. The order stated that "[a] review of [R.F.'s] fin[ancial] affid[avit] indicates that he is above the indigency guidelines for appointment of counsel. Accordingly, this request for fees is denied. Counsel may submit a motion for an order requiring [R.F.] to pay said fees." This order was the first determination of R.F.'s indigency status since the court's initial determination appointing Waters at the outset of the proceedings on January 23, 1995.

The parties appeared in court on June 6, 1996 for a Permanency Planning Hearing. At that time, Waters requested clarification and the respondent court made additional findings regarding the issue of Waters's court appointment and motion for attorney fees and costs. The respondent court stated in relevant part:

1. Section 19–3–202, 8B C.R.S. (1996 Supp.), provides in relevant part:
   **Right to counsel and jury trial.** (1) At the first appearance of a respondent parent, guardian, or legal custodian, the court shall fully advise such party of his legal rights, including ... the right to seek the appointment of counsel if the party is unable financially to secure counsel on his own.
   § 19–3–202(1), 8B C.R.S. (1996 Supp.).

2. ACDHS filed the petition subsequent to its removal of the minor child from R.F.'s home following an allegation by the child's mother, T.N., that R.F. had sexually assaulted T.N. R.F. was tried on the assault charges and was represented by the public defender throughout the criminal proceedings. In December 1995, R.F. was acquitted of all the charges against him.

With respect to the issue of who pays for [R.F.'s] counsel's fees, I'm going to order that [R.F.] continue to be responsible for his own attorneys fees. I've reviewed the affidavit that was submitted and I find [R.F.] is above the guidelines for court appointed counsel.

Waters requested clarification on the issue, asking the following:

I would like to know at what point in time he was responsible for that, just for my— like I said, for practical purposes because I was appointed by the Court. I am aware of this Court, of your Honor's ruling recently but I don't know at what point in time [R.F.] or that the Court was referring to that he's to continue private counsel because I was laboring under the assumption for about two years now that I was court appointed on his case.

The respondent court answered, in part:

To the extent that you were laboring under that deception, I'm rescinding any of your prior orders determining that he's no longer indigent and that it's appropriate, based on his employment status, to make him responsible for all of his attorneys fees.

Thus, the respondent court rescinded Waters's appointment and denied her all of her attorney fees and costs.

Waters now petitions this court for a writ of mandamus compelling the respondent court to order payment of her attorney fees and costs in the amount of $2,780.04, incurred as court-appointed counsel in representation of R.F., and attorney fees and costs in the amount of $1,310.00, incurred in preparation and filing of the petition now before us.

II.

Waters advances two principal arguments: (1) that the respondent court abused its discretion in determining that the client for whom she was appointed counsel was no longer indigent and therefore was ineligible for court-appointed counsel, and (2) that assuming arguendo that her client's indigency status changed, the respondent court abused its discretion in denying her all of her attor-

ney fees and costs. We will address Waters's contentions in turn.

A.

As an initial matter, Waters asserts that the respondent court abused its discretion in finding R.F. to be ineligible for court-appointed counsel because the respondent court failed to consider R.F.'s total financial circumstances. In particular, Waters contends that the respondent court refused to permit R.F. an opportunity to present information other than the November 15, 1995 financial affidavit regarding R.F.'s financial circumstances. Waters cites *Nikander v. District Court,* 711 P.2d 1260 (Colo.1986), for the proposition that a trial court's determination of indigency and, thus, eligibility for court-appointed counsel requires a consideration of a petitioner's complete financial situation rather than merely a strict application of the income eligibility guidelines. She further argues that the Supreme Court Chief Justice Directive 89–3, *Appointment of Counsel and Guardians Ad Litem for Indigent Persons* (October 19, 1989) (amended March 19, 1996) (CJD 89–3), which contains the guidelines relied upon by the respondent court, contemplates this requirement by providing for a determination of indigency where a petitioner's income exceeds the guideline rates. We agree in part. The trial court here properly exercised its duty to monitor R.F.'s indigency status. It erred, however, in two respects. First, it failed to hold a hearing before finding that R.F. had lost his indigency status. Second, the court erred when it retroactively revoked Waters's court appointment.

Section 19–3–202(1), 8B C.R.S. (1996 Supp.), of the Children's Code establishes the right of a respondent parent in a dependency and neglect proceeding "to seek the appointment of counsel if the party is unable financially to secure counsel on his own." CJD 89–3 provides that the trial court shall determine a party's indigency when the motion seeking appointment of counsel is filed. If the party is found to be indigent, the Directive provides that the court shall review the party's indigency status at sentencing or at the final disposition of the case. *See* CJD 89–3 at VII. The determination of a person's

indigency and possible eligibility for court appointment of counsel is within the sound discretion of the trial court, and a court's decision regarding appointment of counsel shall stand absent an abuse of discretion. *See Nikander*, 711 P.2d at 1262.

■ A person seeking court-appointed counsel bears the initial burden of establishing his indigency. *See id.; Allen v. People*, 157 Colo. 582, 591, 404 P.2d 266, 271 (1965) (under Crim.P. 44, "the court's duty to assign an attorney to represent [the defendant] arises only after a showing has been made by him that he is indigent and unable to secure counsel from his own resources"). Indigency is determined by applying the guidelines established in CJD 89–3. *See People v. Tellez*, 890 P.2d 197, 198 (Colo.App.1994). CJD 89–3 defines an indigent person as "one whose income is below the applicable rate in the eligibility income guidelines ... *or who lacks the necessary funds, on a practical basis, to retain competent counsel*." CJD 89–3 at II(A)(2) (emphasis added); *see also Tellez*, 890 P.2d at 198. Section II(A)(3) of CJD 89–3 further provides:

> When the income of the person exceeds the eligibility income guidelines, the court may, after conducting a hearing concerning the person's financial situation, find the person indigent and eligible for court-appointed representation if the person lacks the necessary funds, on a practical basis, to retain competent counsel. Such finding should not be made unless it is established that at least two attorneys will not provide legal services because the person is unable to pay their fee. The court may then appoint the public defender, private counsel, or a guardian ad litem and shall enter a written order requiring the person to reimburse the state for all or part of the expense of legal services and other costs.

Thus, the Supreme Court Chief Justice Directive which governs the appointment of counsel for indigent persons allows a person to qualify for appointed counsel in one of two ways and provides a procedure for the trial court to follow in determining a person's eligibility.

When a person requesting court-appointed counsel presents evidence of his indigency to the court, the court first must determine if the petitioner's monthly or yearly income is below the rates set forth in the guidelines. *See* CJD 89–3 at II(A)(2). If the petitioner's income exceeds the guideline rates, the court may still find the petitioner to be indigent "if the person lacks the necessary funds, on a practical basis, to retain competent counsel." CJD 89–3 at II(A)(3). A claim of practical indigence must be asserted and proved by the party seeking court-appointed counsel. The court is required, by section II(A)(3), to conduct a hearing to make this determination, and the court should not find the petitioner eligible "unless it is established that at least two attorneys will not provide legal services because the person is unable to pay their fee."

In the case at hand, R.F. initially was found indigent and eligible for court-appointed counsel as of January 6, 1995. At that time, he was in custody on criminal charges. By the time he filed his November 15, 1995 financial affidavit, he was employed and earning $1,078.00 a month. By May 1996, at the time of the respondent court's redetermination of his eligibility, the maximum income level for one person under the guidelines was $806.00 a month. *See* CJD 89–3, Attachment B (amended March 19, 1996). Therefore, we agree with the Attorney General, who argues on the respondent court's behalf, that R.F.'s income as indicated on November 15, 1995 was above the applicable rate for automatic eligibility for court-appointed counsel. Nonetheless, we find that, under the facts of this case, the respondent court abused its discretion by failing to allow R.F. the opportunity to establish his indigency by showing that he "lack[ed] the necessary funds, on a practical basis, to retain competent counsel." CJD 89–3 at II(A)(2).

When a claim of practical indigency is made, *Nikander* requires that the trial court's determination of indigency must involve a consideration of the defendant's complete financial situation, including a balancing of "assets against liabilities and income against basic living expenses." *Nikander*, 711 P.2d at 1262. Other factors to be considered include "whether the defendant has any dependents, whether he is employed, income

from all sources, real and personal property owned, extent of any indebtedness, necessary living expenses, and the Eligibility Income Guidelines." *Id.* Thus, in *Nikander,* we found that the Income Eligibility Guidelines are but one factor among many that must be weighed.

■■■ Applying the principles set forth in CJD 89–3 and our prior cases involving the determination of eligibility for court-appointed counsel, we hold that the respondent court abused its discretion in making its determination of R.F.'s eligibility for court-appointed counsel. The respondent court failed to consider any factors other than whether R.F. was automatically eligible under the guidelines and made no findings of fact regarding the point at which R.F.'s indigency status and eligibility changed. We agree with Waters that both CJD 89–3 and our holding in *Nikander* require the court to consider a petitioner's complete financial circumstances by allowing the petitioner an opportunity to establish that he "lacks the necessary funds, on a practical basis, to retain competent counsel."

■■ We find it significant that this case involves the reconsideration of indigency status subsequent to an initial determination. While CJD 89–3 provides a procedure whereby a person may produce evidence to establish his indigency when his income exceeds the guidelines, the Directive requires the defendant to produce evidence that "at least two attorneys will not provide legal services because the person is unable to pay their fee." CJD 89–3 at II(A)(3). Waters was acting as court-appointed counsel pursuant to a valid court order at the time of the respondent court's redetermination of his eligibility. Thus, R.F. had no opportunity, and indeed no reason, to seek and present evidence that at least two attorneys would not represent him. Furthermore, Waters did not, nor was she required to, submit evidence of R.F.'s indigency status with her motion for payment of attorney fees and costs as appointed counsel. The record indicates that Waters resubmitted R.F.'s November 15, 1995 financial affidavit at the request of the clerk of the court after she had submitted her motion for payment of fees and costs. The respondent

court therefore made its determination without considering R.F.'s complete financial situation and, in fact, before R.F. had an opportunity to present such evidence to the court.

The Attorney General argues that R.F. was given an opportunity to present evidence of his indigency to the court during the Permanency Planning Hearing on June 6, 1996. The Attorney General contends that Waters failed to contest the respondent court's finding that R.F. was no longer eligible or to establish that she herself would no longer represent R.F. due to his ineligibility. The Attorney General asserts that Waters, therefore, provided no evidence of R.F.'s indigency other than his financial affidavit from November 15, 1995.

■■ Although it is the petitioner's responsibility to establish his indigency, we disagree with the Attorney General that the petitioner was given an opportunity to do so in this case. The respondent court made its initial determination of R.F.'s ineligibility prior to any hearing on the issue in its May 21, 1996 order denying Waters motion for attorney fees and costs. In addition, we find that the Permanency Planning Hearing was not "a hearing concerning [R.F.'s] financial situation" as contemplated by section II(A)(3) of CJD 89–3. Thus, we hold that the respondent court abused its discretion by redetermining R.F.'s eligibility for court-appointed counsel and finding him retroactively ineligible. The court could not change R.F.'s status without providing R.F. an opportunity to produce evidence of his total financial circumstances including his practical ability to retain competent counsel. We direct the respondent court to allow R.F. an opportunity to present complete evidence regarding his indigency status, and we instruct the court to consider such evidence consistent with this opinion.

We additionally note that Waters's submitted a "Motion and Order for Payment of Excess Attorney Fees." Section V(C) of CJD 89–3 allows for "Requests For Fees In Excess Of The Maximum Total Fee" for payment in all cases covered by CJD 89–3. Section V(C) provides in relevant part:

A judge may only authorize payment of a fee in excess of the maximum total fee established by CJD 89–2 upon a finding of extraordinary circumstances. In determining whether to authorize payment of a fee in excess of the established maximum total fee, a judge should consider whether special circumstances required additional time be spent on the case, including but not limited to a consideration of whether the case required extensive legal research or factual investigation.

An order for payment of fees in excess of the maximum must include a statement of reasons setting forth the specific special circumstances that justify a fee in excess of the maximum.... Mere recapitulation of the time expended on the case is not acceptable as justification for a fee in excess of the maximum and shall be returned by the Office of the State Public Defender–Conflicts Division or the judicial district administrator for reconsideration and amplification by the approving judge.

Although CJD 89–2 does not provide a specific maximum fee for court-appointed attorneys of respondent parents in dependency and neglect proceedings, footnote 3 to the form for an order for payment of fees under CJD 89–3 establishes the maximum fee for attorneys appointed in Title 19 cases. Pursuant to footnote 3, in cases which proceed to trial, the maximum allowable fee is $1500. The footnote further provides that "[f]ees in cases which do not proceed to trial may not exceed one-half of the maximum fee." CJD 89–3, Attachment D, n. 3. Thus, pursuant to section V(C) and footnote 3 of attachment D of CJD 89–3, the maximum amount Waters in entitled to recover as fees in this case, absent a showing of extraordinary circumstances, is $750.

Waters requests excess attorney fees in a total sum of $2,855.04. We therefore direct the respondent court to additionally determine whether Waters has met the CJD 89–3 standard for collecting excess fees and the amount, if any, she may recover in excess of the maximum fee.

B.

We now turn to the question of whether the respondent court abused its discretion in rescinding Waters's order of court appointment and in denying her all of the attorney fees and costs she incurred in representation pursuant to that order. This issue raises two interrelated questions: (1) is court-appointed counsel responsible for bringing a change in a client's financial status to the court's attention, and (2) when is a court's determination of ineligibility for court-appointed counsel to take effect? Assuming arguendo that R.F.'s eligibility for court-appointed counsel did change at some point during Waters's representation, we will address each question in turn.

The Attorney General argues, in part, that the respondent court did not abuse its discretion in denying Waters 100% of her attorney fees and costs because Waters violated her duty of candor to the court, as required by Rule 3.3 of the Colorado Rules of Professional Conduct, in failing to bring R.F.'s change in financial status to the court's attention. Rule 3.3 prohibits an attorney from "fail[ing] to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a ... fraudulent act by the client." R.P.C. 3.3(a)(2). The Attorney General contends that by failing to bring information of R.F.'s changed financial circumstances to the court's attention, Waters assisted R.F. in perpetrating the fraudulent act of receiving court-appointed legal services for which he was ineligible. The Attorney General concludes that it would be inappropriate for this court to award her attorney fees and costs under such circumstances.

On the basis of the record before us, we do not agree that Waters violated R.P.C. 3.3(a)(2). We note that an attorney's responsibility pursuant to this duty is limited in two primary respects. First, an attorney will not be held responsible for failing to inform the court of material information of which the attorney is unaware. While an attorney cannot close her eyes to obvious facts, the duty to inform does not obligate the attorney to undertake an affirmative investigation of her client's financial status. Second, an attorney is not responsible for

informing the court of every known change in a client's financial circumstances. The changes must be material such that nondisclosure would work a fraud on the court. For the purpose of determining eligibility, material changes are those which clearly render the client capable, on a practical basis, of securing competent representation or reimbursing some or all of the expenses of court-appointed counsel and costs.

■ In the case before us, although Waters was acquainted with R.F.'s financial status due to the affidavits required for determination of support obligations and other issues which arose in the dependency and neglect proceeding, this financial information did not clearly indicate that a change had occurred in R.F.'s ability, on a practical basis, to retain competent counsel. Thus, we find that Waters did not violate her duty to inform the court of any material changes in R.F.'s financial status.

■ We now address the issue of when a court's determination of ineligibility for court-appointed counsel should take effect for the purposes of determining attorney fees and costs. Waters argues that the respondent court abused its discretion in denying her all of her attorney fees for her work as the court-appointed attorney. Waters specifically contends that if the respondent court determined on or about May or June 1996 that R.F. was no longer eligible for court-appointed counsel, such a determination should be applied to services provided subsequent to that point and should be supported by findings of fact. As applied to the court-appointed attorney, we agree. The attorney must be able to rely in good faith on the court order appointing her to represent the indigent person. If that order is to be rescinded or modified so that the attorney can no longer look to the State for payment, it must be done prospectively. With respect to the client, however, CJD 89-3 plainly contemplates that he can be ordered to reimburse the State for some or all of the expenses and costs incurred after he lost his status as an indigent.

Section VII of CJD 89-3 is entitled "Reimbursement to the State" and provides in relevant part:

The court shall review the person's indigency status at the time of sentencing or case disposition. If the court determines, at any time after appointment of the public defender, private counsel, or guardian ad litem that the person has an ability to pay all or part of the costs for representation or other costs/expenses, the court shall enter a written order that the person reimburse all or part of said costs to the registry of court for transmittal to the state general fund.

Thus, CJD 89-3 recognizes a trial court's authority to "determine[ ], at any time after appointment of [counsel] that the person has an ability to pay all or part of the costs for representation or other costs/expenses." In fact, it is undisputed by Waters that the respondent court had such authority.

■ Section VII of CJD 89-3 also provides, however, that when the court determines that a person can pay all or part of the costs, the court is required to "enter a written order that the person reimburse all or part of said costs to the registry of court for transmittal to the state general fund." Therefore, while the respondent court did not abuse its discretion in reconsidering R.F.'s eligibility for court-appointed counsel, we find that the court failed to follow the procedures mandated by section VII. Specifically, rather than requiring R.F. to reimburse the State for court-appointed attorney fees and costs as directed by section VII, the respondent court improperly denied attorney fees and costs to Waters and held Waters responsible for collecting payment from R.F. We find that such action constitutes an abuse of discretion. Until the client is found to be ineligible, the Directive anticipates that the court-appointed attorney will be paid by the State and that the client will be required to reimburse the State.

■ We hold that, in general, a court-appointed attorney is to be awarded fees and costs at State expense for services rendered from the date of appointment to the date that the court enters an order finding the defendant to be ineligible. In certain circumstances, however, the court may order State payment to cease at an earlier date. The

trial court retains discretion to determine that the State will pay attorney fees and costs only up to the time at which the client's indigency status changed if the court makes specific findings of fact regarding circumstances which justify such a disposition, such as the discovery of fraud or misrepresentation on the part of appointed counsel. We also hold that if the court determines that a person became ineligible at a previous date, the court shall order that the person reimburse the State in whole or in part for the expenses and costs it incurred on that person's behalf. *See* CJD 89–3 at VII.

In the case at hand, the respondent court made no findings of fact indicating the point at which R.F. became ineligible for court-appointed counsel or justifying a retroactive denial of attorney fees and costs to Waters who was acting pursuant to a proper order of court appointment. Accordingly, we make the rule absolute, directing the respondent court to conduct a hearing concerning R.F.'s financial status and compelling the court to order payment of Waters's attorney fees and costs consistent with this opinion.

### III.

Waters also requests payment of costs and attorney fees in the amount of $1310.00 which she has incurred in bringing this original proceeding. C.A.R. 39(b) and C.R.C.P. 54(d) address the award of costs generally in judicial proceedings. C.R.C.P. 54(d) provides as follows:

> Costs. Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the state of Colorado, its officers or agencies, shall be imposed only to the extent permitted by law.

C.R.C.P. 54(d). C.A.R. 39(b) further provides that "[i]n cases involving the State of Colorado or an agency or officer thereof, if an award of costs against the State is authorized by law, costs shall be awarded in accordance with the provisions of section (a) of this Rule; otherwise, costs shall not be awarded for or against the state." C.A.R. 39(b).

■ With regard to the State, we have interpreted these rules to mean that costs may be awarded against the State where there is an express legislative provision for costs against the State or where the State is in the position of a party litigant against whom costs are otherwise legislatively authorized to be awarded. *See Bennett Bear Creek Farm Water & Sanitation Dist. v. City & County of Denver,* 928 P.2d 1254, 1273–74 (Colo.1996); *Central Colo. Water v. Simpson,* 877 P.2d 335, 349 (Colo.1994); *Passarelli v. Schoettler,* 742 P.2d 867, 872 (Colo. 1987); *Division of Employment & Training v. Turynski,* 735 P.2d 469, 472–73 n. 5 (Colo. 1987); *Board of County Comm'rs v. Slovek,* 723 P.2d 1309, 1313 (Colo.1986); *Lee v. Colorado Dep't of Health,* 718 P.2d 221, 228–29 (Colo.1986). In this case, however, there exists no substantive legislative authorization for the award of costs separate from C.R.C.P. 59(d) and C.A.R. 39(b). The provision in CJD 89–3 for attorney fees and costs does not apply to Waters because she is representing herself, rather than her client, in this action. Thus, we find that the rationale of *Central Colorado Water* is applicable to this case, and we deny Waters's request for costs in bringing this original proceeding.

■ We similarly deny Waters's request for attorney fees. Colorado follows the American Rule that, in general, attorney fees are not recoverable absent a specific contractual, statutory, or procedural rule providing otherwise. *See Buder v. Sartore,* 774 P.2d 1383, 1390 (Colo.1989). In addition, we have been particularly vigilant in requiring an explicit authorization for attorney fees where the fees are sought against the State. *See People v. District Court,* 808 P.2d 831 (Colo. 1991).

In *People v. District Court,* we considered whether attorney fees could be awarded against the State as a sanction for the prosecution's failure to disclose exculpatory evidence to the defense in violation of Crim.P. 16. The trial court entered an order in which it required the State to pay defense attorneys' fees for the time between the eve of trial and the entry of the order. The People brought an original proceeding pursu-

ant to C.A.R. 21 requesting that the trial court's order be vacated. We held that such fees could not be awarded, stating that "[a]n award of attorney's fees to be payable from public funds implicates sensitive budget and funding considerations, and authority to intrude into these areas is not to be lightly implied." *People v. District Court*, 808 P.2d at 835. We cited the general rule that attorney fees are not to be awarded to the prevailing party absent a specific statutory, contractual or procedural rule and found that Crim.P. 16 did not provide such a rule. *See id.* at 835. We further noted that:

> The requirement that attorney's fees be expressly authorized is applied with even greater rigor when an award is to be payable from public funds. Even when attorney's fees are expressly authorized, we have required some indication of legislative intent to allow such an award against the government.

*Id.* at 836. Accordingly, because there is no explicit legislative declaration entitling Waters to attorney fees for this proceeding, we deny Waters's request for such fees.

## IV.

We hold that the respondent court abused its discretion in rescinding Waters's court appointment and denying payment to her of all of her attorney fees and costs. We find that the respondent court failed to follow the procedure set forth in CJD 89–3 when it determined R.F.'s eligibility without providing R.F. an opportunity to present evidence of his inability, on a practical basis, to retain competent counsel. Thus, we order the respondent court to reconsider R.F.'s indigency status and eligibility for court-appointed counsel consistent with this opinion. We also deny Waters's request for costs and attorney fees incurred in bringing this original proceeding because an award of such fees and costs is not expressly legislatively authorized. Accordingly, we make the rule absolute.