Robert Olen DAVIS, Plaintiff–Appellant,

v.

Loretta Ditirro SCHWANKL,
Defendant–Appellee.

No. 01CA1837.

Colorado Court of Appeals,
Div. I.

Oct. 10, 2002.

Certiorari Granted May 27, 2003.*

Arrington & Associates, P.C., Barry K. Arrington, Golden, Colorado, for Plaintiff–Appellant.

* Justice BENDER does not participate.

Holland & Pagliuca, P.C., Jeffrey S. Pagliuca, Heather R. Hanneman, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge WEBB.

Plaintiff, Robert Olen Davis, appeals the trial court's order granting attorney fees in favor of defendant, Loretta Ditirro Schwankl, pursuant to § 16–3–203, C.R.S.2002. We reverse.

On August 9, 1999, at 8:40 p.m., defendant telephoned the Wheat Ridge Police Department dispatcher, described having been awakened at about 1:35 a.m. that morning by sounds of a disturbance across the street, and reported some "physical abuse going on, some violence" involving plaintiff and his wife, whom defendant identified by name and address. Defendant also told the dispatcher that she had concerns about "sexual violence" or "sexual abuse" involving plaintiff and his teenage daughter, and she asked whether social services could contact plaintiff's family.

An officer promptly went to plaintiff's home, spoke with his wife, and reported that nothing was wrong. Three weeks later, a county social services department employee made an unannounced visit to plaintiff's home and spoke to plaintiff, his wife, and his daughter, but discovered nothing unusual. Social services closed the case as unfounded.

As relevant here, plaintiff sued defendant for slander based on her telephone call to the police. Following a three-day trial, the jury answered special interrogatories and returned a verdict in favor of defendant.

Defendant then moved for attorney fees pursuant to §§ 13–17–101 and 16–3–203, C.R.S.2002, and for costs. Plaintiff disputed defendant's right to recover attorney fees, but did not contest the amount of the fees claimed or the imposition of costs. Without taking further evidence, the trial court awarded defendant all of her attorney fees under § 16–3–203 and her costs. This appeal followed.

## I.

■ Plaintiff asserts § 16–3–203 requires proof that a crime is being committed, and,

therefore, the trial court erred in awarding attorney fees to defendant. We agree.

Statutory interpretation is a question of law that we review de novo. *Colo. State Bd. of Accountancy v. Paroske,* 39 P.3d 1283 (Colo.App.2001).

Our fundamental responsibility when interpreting a statute is to determine the General Assembly's intent. We begin with the language of the statute, *People v. Cooper,* 27 P.3d 348 (Colo.2001), which is afforded its ordinary and common meaning. *Bd. of County Comm'rs v. Vail Assocs., Inc.,* 19 P.3d 1263 (Colo.2001).

We construe statutes as a whole, giving effect to every word. *Bd. of County Comm'rs v. Vail Assocs., Inc., supra.* Strained or forced constructions are disfavored. *Martin v. Montezuma–Cortez Sch. Dist. RE–1,* 841 P.2d 237 (Colo.1992).

Further, we presume that the General Assembly meant what it clearly said, *Askew v. Industrial Claim Appeals Office,* 927 P.2d 1333 (Colo.1996), and did not use language idly. *See Colorado Ground Water Commission v. Eagle Peak Farms,* 919 P.2d 212 (Colo.1996). Thus, we must respect the words chosen by the General Assembly. *See Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332 (Colo.1997).

Only if statutory language is ambiguous, or if the statute appears to conflict with other provisions, may we look to extrinsic factors, such as prior law, the consequences of a given construction of a statute, and the end to be achieved by the statute. *People v. Cooper, supra.* Absent ambiguity, we do not consider legislative history. *Grant v. People,* 48 P.3d 543 (Colo.2002).

Section 16–3–203 provides:

Any person who is not a peace officer ... who is made the defendant in any civil action as a result of having sought to prevent a *crime being committed* against any other person, and who has judgment entered in his favor shall be entitled to all his court costs and to reasonable attorney fees incurred in such action.

(Emphasis supplied.)

We perceive no ambiguity in this language: to recover attorney fees, the underlying law-

suit must have arisen from an effort to prevent a crime that was "being committed." In our view, the statute sets out two requirements: first, the phrase "having sought to prevent" demands proof of the actor's purpose; and, second, the phrase "a crime being committed" further requires that the preventive effort be undertaken in connection with a crime in progress. Thus, the phrase "being committed" limits the statute by giving a claim for legal fees only to persons who act under this clear and exigent circumstance.

Defendant raises various arguments in favor of interpreting the statute more broadly. We are not persuaded.

■ Defendant first contends the sole focus should be on her good faith in seeking to prevent what she reasonably suspected was a crime. However, § 16–3–203 does not protect actions taken on the basis of good faith suspicions.

In contrast, the immediately preceding statute expressly recognizes a good faith defense based on mere suspicion of a crime. *See* § 16–3–202(4), C.R.S.2002 ("Private citizens, acting *in good faith*, shall be immune from any civil liability for reporting to any police officer or law enforcement authority the commission *or suspected commission* of any crime . . . .") (emphasis supplied). Both § 16–3–202(4) and § 16–3–202 were enacted in the 1977 legislative session.

■ Defendant further contends her proposed interpretation should be accepted as harmonizing § 16–3–203 and § 16–3–202(4), because a person who enjoys the immunity created by § 16–3–202(4) would also be allowed to recover legal fees under § 16–3–203. We do not agree.

"If a statute potentially conflicts with another statute, a court must attempt to harmonize them to effectuate their purposes." *People v. Hampton,* 876 P.2d 1236, 1240 (Colo.1994). "When construing two statutes respecting the same or similar subject matter, full effect must be given to both legislative provisions." *People v. Hamilton,* 666 P.2d 152, 155 (Colo.1983)(citing *Buck v. Dist. Ct.,* 199 Colo. 344, 608 P.2d 350 (1980).)

Here, however, we do not perceive these statutes as being in conflict because they differ in scope. Section 16–3–202(4) protects a single type of behavior, communicating to authorities, but in a broad context, commission or suspected commission of any crime. In contrast, § 16–3–203 protects any type of preventive behavior, but in the narrower context of "a crime being committed."

These statutes also afford different protections. Section 16–3–202(4) provides immunity from civil liability, which only limits claims by another person. Section 16–3–203 provides indemnity for attorney fees incurred, which creates a claim against another person, contrary to the common law rule that parties to civil litigation bear their own legal fees. *See, e.g., Waters v. District Court,* 935 P.2d 981 (Colo.1997).

We perceive the distinctive protection afforded by § 16–3–203 as consistent with its different scope. Action to prevent a crime in progress covers a range of unspecified conduct, including behavior resulting in excessive force against a perpetrator or even injury to a bystander. Hence, the blanket immunity of § 16–3–202(4) would be overinclusive. However, recovery of attorney fees upon a successful defense would properly protect an appropriate response to a crime in progress.

Moreover, if the scope of the statutes overlapped because a person was sued "for reporting to any police officer" (§ 16–3–202(4)), as an effort "to prevent a crime being committed" (§ 16–3–203), then the person would enjoy immunity under the reporting statute and, because the crime being reported was in progress, the person could also recover legal fees incurred in establishing that immunity.

Defendant next asserts plaintiff's reading of the statute leads to an absurd result because a person cannot "prevent" a crime already in progress. We may not interpret a statute in a manner that reaches an absurd result. *AviComm, Inc. v. Colo. Pub. Utils. Comm'n,* 955 P.2d 1023 (Colo.1998).

However, the dictionary definitions of "prevent" offered by the parties are compatible with both anticipatory action ("to keep from happening," *American Heritage Dictionary* (3d ed.1994)), and direct intervention ("to stop or hinder," *Webster's Encyclopedic*

*Unabridged Dictionary of the English Language* (1996)). Hence, we do not view use of "prevent" as transforming the narrow meaning of "a crime being committed" into an absurdity.

Again, we find instructive comparison to the language of § 16–3–202(4), which grants immunity to a person who reports or provides information concerning "any crime." Hence, we do not perceive the narrower wording of § 16–3–203, "a crime being committed," as opposed to broader criteria for protected intervention such as reasonable suspicion, to be absurd, especially given the difference between immunity from liability and indemnity for attorney fees. If the plain words of the statute "[d]o not correspond to the General Assembly's intent, it is for that body, not this court, to rewrite it." *Humane Society v. Industrial Claim Appeals Office*, 26 P.3d 546, 548 (Colo.App.2001).

Defendant's argument that a citizen who suspected a murder was imminent would have to wait until the attack began to gain the statute's protection understates what constitutes commission of a crime. *See* § 18–2–101(1), C.R.S.2002 ("A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense."). The overt act need not be the last proximate act necessary to consummate the criminal object. *Johnson v. People*, 174 Colo. 413, 484 P.2d 110 (1971).

Finally, defendant contends the public policy favoring citizens assisting police will be frustrated if a citizen, who reports a suspected crime in good faith, does not enjoy the statute's protection. However, as indicated, § 16–3–203, unlike § 16–3–202(4), does not address suspected crimes. In any event, defendant's public policy argument, like other considerations extraneous to the General Assembly's chosen words, has no place where, as here, the language of the statute is clear. *See Martin v. People*, 27 P.3d 846, 848 (Colo. 2001)("[i]t is for the legislature, not the courts, to decide what laws best serve the public interest"); *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo.1994)("We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate.").

Accordingly, we conclude attorney fees cannot be awarded under § 16–3–203 unless the record shows that, when defendant contacted the police, a crime was "being committed." However, this conclusion does not end our inquiry, because we must also determine whether a crime was in progress.

## II.

■ Plaintiff argues defendant did not prove that a crime was in progress when she telephoned the police. We agree.

In ruling on defendant's motion for attorney fees, the trial court concluded that "a plain reading" of the statute supports a fee award to defendant. The court made no factual finding as to a crime being committed, and we cannot discern from the order whether the court concluded that § 16–3–203 requires such a finding.

Moreover, defendant's motion for attorney fees did not contend she had established that a crime was being committed. Rather, she asserted that her telephone call "was seeking to report conduct that I believed may have constituted domestic violence and child abuse." Defendant offered no additional evidence of criminal activity in connection with her motion.

The evidence at trial, viewed most favorably to defendant, does not show that a crime was in progress when or even immediately before she telephoned police. The sounds that defendant equated with domestic violence had occurred eighteen hours earlier, at a time when uncontroverted evidence placed plaintiff in another state. The observations that defendant identified as inappropriate conduct of plaintiff towards his daughter, even assuming that the conduct could constitute abuse, had occurred between seven and twenty months before defendant called police.

■ Nevertheless, defendant contends the special verdict forms establish the jury determined plaintiff had abused his wife and daughter and, therefore, defendant can recover attorney fees even if § 16–3–203 ap-

plies only to a crime in progress. We disagree.

On the special verdict form, the jury was asked, "Did the defendant ... publish the statement that [plaintiff] physically abused his wife?" The jury answered, "No." The next question asked, "Was the statement substantially truthful?" The jury answered, "Yes." The jury also was asked, "Did the defendant ... publish the statement that [plaintiff] abused his daughter?" The jury answered, "No." The jury answered "yes" to the next question, "Was the statement substantially truthful?"

In our view, the jury's answers do not establish that plaintiff committed any crimes. This issue was not before the jury because the court instructed the jury defendant's theory was that she had "called the police in good faith based on her concern for plaintiff's family members," and the jury instructions did not define the elements of any crime.

In addition, the jury was instructed that substantial truth applied to the "substance or gist" of defendant's statement, but "substantial truth does not require every word to be true." *See Barnett v. Denver Publ'g Co.,* 36 P.3d 145 (Colo.App.2001). Thus, substantial truth of defendant's statements, as summarized in the special interrogatories, would not prove the elements of any crime.

Finally, even substantial truth of defendant's statements would not establish temporal proximity between the alleged abuse and defendant's telephone call to the police.

Accordingly, we reverse the order awarding attorney fees to defendant under § 16–3–203.

Judge METZGER and Judge GRAHAM concur.