**Bonnie C. FERRELL, Petitioner,**

v.

**GLENWOOD BROKERS, LTD.,
a Colorado Corporation,
Respondent.**

**No. 92SC107.**

Supreme Court of Colorado,
En Banc.

March 29, 1993.

Elwyn F. Schaefer, Steven Clymer, Elwyn F. Schaefer, P.C., Denver, for petitioner.

Robert M. Noone, Margaret O'Donnell, Delaney & Balcomb, P.C., Glenwood Springs, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

In the Garfield County Court, respondent, Glenwood Brokers, Ltd. (Glenwood), brought an action against petitioner, Bonnie C. Ferrell (Ferrell), to recover a real estate brokerage commission of $3,900 due after Ferrell breached a real estate listing contract. The contract also provided for an award of reasonable attorney fees to the prevailing party in case of litigation or arbitration arising out of the contract. The county court entered judgment in favor of Glenwood, and, in addition to the $3,900 real estate commission, awarded attorney fees of $4,794 to Glenwood. Ferrell appealed to the district court, contending that the award of attorney fees brought the damages awarded to Glenwood above the then-existing $5,000 jurisdictional limit of the county court. The district court affirmed the county court and we granted certiorari. We affirm.

## I.

Glenwood, a Colorado corporation, is a real estate brokerage firm in Glenwood Springs, Colorado. Mark Kister is a shareholder and director of Glenwood, and a duly licensed real estate broker. Ferrell is a dentist who lives and practices in Denver.

In his capacity as a real estate broker, and as an agent of Glenwood, Kister entered into an Exclusive Right to Sell Listing Contract (Listing Contract) with Ferrell on August 12, 1989, for the purpose of selling her condominium unit in Glenwood Springs. Among other terms, the Listing Contract provided that a six percent commission would be earned upon Glenwood's procuring a ready, willing and able buyer, and that in the event of litigation over its enforcement, the prevailing party is entitled to attorney's fees.

Kister procured an offer to purchase the subject property from a ready, willing and able purchaser for the condominium. Subsequently, both the purchasers and Ferrell reneged on the deal, however, the commission had already been earned and was due and payable at the time of the scheduled closing, October 27, 1989.

Glenwood commenced an action in the Garfield County Court, seeking the commission, as well as interest, costs, and attorney fees. After a bench trial, the court entered judgment in Glenwood's favor for $3,900 with interest, and costs in the amount of $5,235.57, including $4,794 in attorney fees.[1] Ferrell appealed the judgment to the district court, which affirmed the county court judgment. We granted certiorari, and now affirm the district court judgment.

## II.

At the time this case was filed, section 13–6–104, 6A C.R.S. (1987)[2] provided in relevant part:

(1) The county court shall have concurrent jurisdiction with the district court in

---

[1]. At oral argument, counsel for the petitioner estimated that attorney fees probably have increased to approximately $15,000 at present.

[2]. As of January 1, 1991, the jurisdictional limit of the county courts was raised to $10,000. § 13–6–104, 6A C.R.S. (1992 Supp.).

civil actions, suits, and proceedings in which the debt, damage, or value of the personal property claimed does not exceed five thousand dollars....

Thus, the jurisdiction of the county courts of the state was limited to actions, suits, and proceedings in which the debt, damage, or value of the personal property claimed did not exceed five thousand dollars. § 13–6–104(1). In the case at bar, Ferrell claims that the Garfield County Court had jurisdiction of this matter only to the extent that the total amount awarded, including attorney fees accrued during the course of the litigation and payable to the prevailing party pursuant to contract, were less than or equal to five thousand dollars. We reject this argument as fundamentally flawed because it ignores settled precedent regarding when jurisdiction is determined.[3]

In *Denver Brick Manufacturing Co. v. McAllister*, 6 Colo. 326 (1882), this court construed a constitutional provision and a statute which were almost identical to the jurisdictional limit statute at issue here except for the amount of the limit. We held "that the amount specified as the statutory limitation of the jurisdiction in question must be taken to mean the amount due the plaintiff, or the value or amount of his claim, or the value of the property sought to be recovered *at the time of bringing the action*." *Id.* at 329–30 (emphasis added). We reasoned that it "would be a most lame and impotent conclusion" to say that a court could be ousted of jurisdiction of a case which was within its jurisdiction when commenced, or a plaintiff could be forced

either to remit part of the recovery or to seek another forum late in the proceedings. *Id.* at 328.

During that same December term of the court, we also decided *Cramer v. McDowell*, 6 Colo. 369 (1882). There, the plaintiff filed his action before a justice of the peace, who did not have jurisdiction of any case where the amount in controversy exceeded $300. At the time of filing, $300 principal and approximately $4 interest were due on the notes at issue. After trial, judgment was entered in the plaintiff's favor for $305.10. This court held that the judgment was void and no execution could issue. We reached this result because the subject matter amount exceeded the justice's jurisdiction when the action was filed, and the plaintiff did not make a timely offer to remit part of the judgment and bring the amount in controversy within the justice's jurisdiction. *Id.* at 371.

The element of recovery which made the judgment exceed the jurisdictional limit in *Denver Brick* was interest accumulating after the action was commenced on a note secured by a deed of trust. Here, it is attorney fees agreed to by contract. At the time the present action was commenced by filing a complaint on November 29, 1989, the record shows that Glenwood's attorney had performed 5.7 hours of billed work, worth $484.50, and only 33 days of interest, at $.85 per day, totalling $28.05 (this court's calculation), had accumulated by November 29, 1989, for a grand total of $4,412.55, well within the jurisdictional limit.[4]

**3.** Ferrell argues strenuously that, in the federal court system, attorney fees, when awardable to the prevailing party, are included in determining whether the amount in controversy is above the minimum jurisdictional amount of federal courts. This argument is not apposite for several reasons. First, the federal courts are looking at "the amount in controversy," whereas Colorado county court jurisdiction depends on the amount of the debt, damage or value of personal property claimed. Second, the standard for the federal courts is whether it is "clear to a legal certainty" that the plaintiff cannot recover the jurisdictional amount, which connotes a policy of extending jurisdiction when and where possible, whereas our cases generally look to the amount claimed by the plaintiff in the *ad*

*damnum* clause and a statement that the amount claimed is within the jurisdictional limit. Third, both the federal courts and our state county courts determine jurisdiction at the time the lawsuit is filed, and subsequent events cannot destroy that jurisdiction. 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3702 at 28–29 (2d ed. 1985); *Denver Brick Mfg. Co. v. McAllister*, 6 Colo. 326, 329–30 (1882).

**4.** In the form complaint used in this case, the plaintiff or its agent "declare[s] under oath ... That the amount claimed from the Defendant(s) is $_____, including proper interest, costs, and any other items allowed by statute or specific

Under these facts and our reasoning in *Denver Brick*, the county court had jurisdiction when the complaint was filed. Once a court has jurisdiction over a case, the court does not lose jurisdiction simply because the case is litigated and attorney fees are incurred. When Glenwood commenced its action against Ferrell, the total sum sought including the amount owed on the debt, interest thereon, and attorney fees payable by contract was within the jurisdictional limit. The county court did not lose jurisdiction because Ferrell contested the case.

■ Furthermore, we cannot agree with Ferrell's contention that, once its attorney fees had accumulated sufficiently so that the potential judgment exceeded $5,000, Glenwood should have transferred the action to the district court. Implementing such a rule would be a waste of judicial resources. Under that theory, cases properly filed in county court would be transferred to district court at any stage of the litigation, even on the eve of (or during) trial. Two, rather than one, courts would be required to process the same case before it was resolved. Such a rule also would encourage bad faith litigation and discourage settlement because fee-shifting contracts would be enforceable only to a very low limit. Furthermore, such contracts, which are clearly enforceable and serve to discourage non-meritorious contract disputes and to encourage settlement, would be ineffective to serve those purposes.

Because the debt, damage, or value of the personal property claimed by Glenwood, including pre-complaint interest and attorney fees, was within the jurisdictional limit of $5,000 when Glenwood filed its complaint, the county court had jurisdiction over the complaint. It was not ousted of its jurisdiction solely because, at the time judgment was entered, the amount of attorney fees and underlying debt sued upon exceeded $5,000.

## III.

■ There also is a separate, independent ground for upholding the county court's judgment. Under the law applicable to this case, the county court properly found the attorney fees to be costs which may be awarded over and above the county court's $5,000 jurisdictional limit. Ferrell argues that attorney fees cannot be awarded here as "costs," because section 13–16–122(1)(h), 6A C.R.S. (1987), does not expressly permit contractually-authorized attorney fees to be awarded as costs.[5] Ferrell argues that, if the General Assembly had intended the award of contractually authorized attorney fees as costs, it would not have qualified the award of such fees by providing for them "when authorized by statute or court rule." Instead, the General Assembly would have simply said that "costs may include any attorney fees." We do not agree. Ferrell's proposed statutory language easily could be misinterpreted as a wholesale abolition of the "American rule," whereby parties in litigation generally pay their own legal fees. In the American system, a party cannot recover his or her legal fees, whether as "costs" or "damages," unless there is some exception to the general rule. The list of expenses that may be awarded as costs under section 13–16–122, however, is illustrative and not exclusive. *Church v. American Standard Ins. Co. of Wisconsin*, 764 P.2d 405, 406 (Colo.App.1988). In general, absent a specific prohibition, the trial court has discretion over the awarding of costs. *Id.; see Rossmiller v. Romero*, 625 P.2d 1029, 1030 (Colo.1981).

---

agreement." *See also* Form 2 (Complaint under simplified civil procedure), 7B C.R.S. at 64–65 (providing "[t]hat the amount claimed from ____, Defendant is ____ Dollars and ____ cents ($____) together with proper interest, costs and any other items allocable by statute or specific agreement.").

We note that the jurisdiction statute does not mention costs or interest, and we do not express any opinion whether costs incurred prior to the time the complaint is filed must be included within the calculation of the amount claimed to be within the jurisdiction of the county court.

5. Section 13–16–122(1)(h) provides: "Whenever any court of this state assesses costs pursuant to any provision of this article, such costs may include: ... Any attorney fees, when authorized by statute or court rule."

This court, like most if not all jurisdictions, has given various classifications to attorney fees, depending on the context of the case. Two cases are illustrative. In *Leadville Water Co. v. Parkville Water District*, 164 Colo. 362, 436 P.2d 659 (1967), we noted that an owner of property being taken by eminent domain was entitled to his or her costs in addition to the fair and reasonable value of the property. With regard to attorney fees, we stated that attorney fees do not fall within the class of expenses usually taxed as costs. *Id.* at 365, 436 P.2d at 660. In *Bunnett v. Smallwood*, 793 P.2d 157 (Colo.1990), the issue was whether attorney fees could be awarded as damages to the prevailing party who successfully enforced an agreement not to sue. We stated that, according to the "American rule," "attorney fees and costs are not considered actual damages 'because they are not the legitimate consequences of the tort or breach of contract sued upon.'" *Id.* at 160. The difficulty in characterizing attorney fees has been summarized as follows:

> Perhaps the best answer is that attorney fees are neither costs nor damages, but a hybrid, partaking of each in varying degrees. Even when they are classified as costs, they are not treated as are ordinary costs, but as a separate item of monetary relief; even when they are treated as damages, they are often awarded and set by a court, even in a jury trial.

1 Mary Frances Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* (hereinafter *Court Awarded Attorney Fees*) ¶ 1.02 at 1–9 (1992).

 A realization that attorney fees are a hybrid of costs and damages is important, because in cases where recovery of attorney fees is authorized, either by statute, court rule, contract, or common law, a classification of such an award either as "costs" or "damages" can determine the outcome. For example, if attorney fees are "damages," then the merits of a lawsuit are not appealable until the amount of fees has been set. *Court Awarded Attorney Fees* ¶ 1.01 at 1–5; *Baldwin v. Bright Mortgage Co.*, 757 P.2d 1072 (Colo.1988).

If they are considered to be damages, attorney fees must be determined by the trier of fact and proven during the damages phase, and can be multiplied under statutes that permit doubling and trebling of damages. Post-judgment interest is awardable on attorney fees treated as damages. *Court Awarded Attorney Fees* ¶ 1.01 at 1–5 to 1–8.

 On the other hand, if attorney fees are classified as "costs," then an appeal on the merits can proceed independent of the fees issue. *Baldwin*, 757 P.2d at 1074. Costs can be taxed by the clerk after being determined by a judge without being specifically pleaded, with issues of entitlement and amount not reached until after the merits are decided. *Roa v. Miller*, 784 P.2d 826, 829 (Colo.App.1989) ("[I]f the award [of attorney fees] is dependent upon the achievement of a successful result in the litigation in which they are to be awarded and the fees are for services rendered in connection with that litigation, a determination of the propriety of an award of fees need not be made until that litigation is completed and the result is known."). Finally, costs are not subject to double and treble damages. *Court Awarded Attorney Fees* ¶ 1.01 at 1–7.

 Instead of trying to anticipate all possible fact situations and classify attorney fees either as costs or damages in particular cases, we conclude that such a determination is, by its very nature, a fact- and context-sensitive one, which rests within the sound discretion of the trial court. Such discretion should be guided by the nature of the requested attorney fees. If attorney fees are part of the substance of a lawsuit, that is, if the fees being sought are "the legitimate consequences of the tort or breach of contract sued upon," *Bunnett*, 793 P.2d at 160, such as in an insurance bad faith case, then such fees are clearly damages. If, on the other hand, attorney fees are, as here, simply the consequence of a contractual agreement to shift fees to a prevailing party, then they should be treated as "costs," at least where the fee-shifting contract provision is not

the subject of the dispute between the parties and the contract itself is proven to exist. In such a case, it is within the sound discretion of the trial court to defer consideration of the entitlement to such fees, and the amount of the fees, until the merits of the case are decided. *Roa,* 784 P.2d at 829.

Ferrell also argues that, unlike statutorily and rule-authorized attorney fees, contractually authorized fees necessarily arise out of a contract, the existence and validity of which must be proven at trial, and therefore make up a part of the "debt, damage, or value of the personal property claimed." For this reason, Ferrell argues, Glenwood confuses the procedure for awarding attorney fees with the substantive demand and proof of the right to recover those fees.

This argument, however, is groundless in light of the facts of this case. There was no contention that the contract between Glenwood and Ferrell did not exist or was invalid. The only question was the application of the contract to the facts, that is, whether Glenwood had produced a ready, willing, and able buyer. Moreover, it would appear that in the vast majority of cases, the only question about attorney fees would be whether the amount claimed was "reasonable," which was not in question here. While, in some other case, the question of whether contractually authorized attorney fees should be considered actual damages because they are more directly at issue might be properly before the court, such is not the case here.

Because there is no specific prohibition against awarding contractually authorized attorney fees as "costs," and the attorney fees awarded were not clearly "damages," the county court was within its discretion in awarding the attorney fees as "costs."

### IV.

The jurisdiction of the county court is determined at the time the lawsuit is commenced, and the fact that interest or attorney fees continue to accrue does not oust that court of its jurisdiction. The county court, alternatively, was within its discretion in awarding the contractually autho-

rized attorney fees as "costs." The judgment of the district court is affirmed.

LOHR, J., specially concurs, and KIRSHBAUM, J., joins in the special concurrence.

Justice LOHR specially concurring:

I concur in the judgment of the court and in parts I and II of the majority opinion. In order to decide this case, it is unnecessary to address the "separate, independent ground for upholding the county court's judgment" discussed in part III of the majority opinion. *See* maj. op. at 940. For this reason, and because I do not find all that is said in part III persuasive, I do not join in that section of the majority opinion.

KIRSHBAUM, J., joins in this special concurrence.