FARMERS RESERVOIR AND IRRIGA-
TION COMPANY; the Church Ditch
Company; Farmers' High Line Canal
and Reservoir Company; City of West-
minster; City of Thornton; City of
Northglenn; and City of Arvada, Plain-
tiffs–Appellants,

v.

CITY OF GOLDEN, Defendant–Appellee,

and

Consolidated Mutual Water Company,
Plaintiff–Appellee,

and

James Hall, Division Engineer, Water
Division One, Appellee Pursuant
to C.A.R. 1(e).

No. 02SA298.

Supreme Court of Colorado,
En Banc.

May 23, 2005.
Rehearing Denied June 13, 2005.*

---

* Justice KOURLIS, Justice RICE and Justice COATS would grant the petitions.

John P. Akolt, III, Brighton, for Farmers Reservoir and Irrigation Company.

Law Office of Brice Steele, Brice Steele, IV, Brighton, for Farmers' High Line Canal and Reservoir Company.

Carlson, Hammond & Paddock, LLC, Mary Mead Hammond, Lee H. Johnson, Karl Ohlsen, Denver, for the City of Westminster.

Porzak Browning & Bushong LLP; Glenn E. Porzak, Steven J. Bushong, Michael F. Browning, Boulder, for the City of Golden.

Moses, Wittemyer, Harrison & Woodruff, PC, Veronica A. Sperling, Boulder, for the City of Arvada.

Thornton City Attorney's Office, Dennis Hanson, Thornton, for the City of Thornton.

Fischer, Brown & Gunn, PC, William R. Fischer, Fort Collins, for the City of Northglenn and The Church Ditch Company.

Justice MARTINEZ delivered the Judgment of the Court with respect to Part II.A. and the Opinion of the Court with respect to all other sections of the Opinion.

We review this water rights dispute involving an alleged expansion of use for the third time. *See Farmers High Line Canal & Reservoir Co. v. City of Golden,* 975 P.2d 189 (Colo.1999) (hereinafter *"FHL I"*); *Farmers Reservoir & Irrigation Co. v. City of Golden,* 44 P.3d 241 (Colo.2002) (hereinafter *"FHL II"*). We here consider the water court's award of attorney fees, costs, and moratory interest to Appellee, the City of Golden ("Golden") and against Appellants, Farmers Reservoir and Irrigation Company, The Church Ditch Company, Farmers' High Line Canal and Reservoir Company, the City of Westminster, the City of Thornton, the City of Northglenn, and the City of Arvada.[1]

The judgment of the water court that Appellants' judicial estoppel claim was groundless and that Golden is entitled to attorney fees is affirmed. By operation of C.A.R. 35(e), where the Colorado Supreme Court is equally divided, the judgment of the lower court is affirmed without opinion. We address the remaining issues raised on appeal in this opinion. We affirm the amount of the attorney fees awarded. We also affirm both the water court's award of costs to Golden as the prevailing party and the amount of the award. We reverse, however, the water court's award of costs against the municipal appellants, the cities of Westminster, Thornton, Northglenn and Arvada, because such an award lacked statutory authorization. We nevertheless note that the cost award was authorized against the private litigants. We also reverse the water court's award of moratory interest on the fees and costs because

the awards were in the nature of costs, not damages.

## I. Facts and Proceedings

### A. Background

We first provide a cursory review of the decrees governing Golden's and Con Mutual's interests in the disputed water right, Clear Creek Priority 12 ("Priority 12"). For further background, see *FHL I* and *FHL II.*

#### 1. The 1960s Decrees and the Consolidated Mutual Decree

Two 1960s decrees govern Golden's present interest in Priority 12. The first ("1961 decree") expressly permits Golden to divert a maximum annual flow of 2.86 cubic feet per second (c.f.s.)[2] for municipal use. The 1961 decree contains no stated acre-feet,[3] or volumetric, limit. The second ("1964 decree") expressly permits Golden to divert an additional 1.8 c.f.s. of Priority 12 for municipal use and likewise contains no volumetric limits. Cumulatively, the express terms of the 1961 and the 1964 decrees give Golden the right to divert up to 4.66 c.f.s. of water from May through October of each year.

These flow rates are based on the 1961 engineering studies and trial testimony of Golden's expert water engineer, W.W. Wheeler. During the 1960s proceedings, Wheeler testified that, given Golden's pattern of municipal water use, which included irrigating 138 acres of lawn, the total historical consumptive use associated with Golden's two Priority 12 decrees was approximately 374 acre-feet per year. He further testified that 2.86 c.f.s. of water could be transferred to Golden and that, after these rights were changed from agricultural use to municipal use, Golden's annual approximate consumptive use would be 278 acre-feet per year.

Con Mutual's present interest in Priority 12 was established in part through 1993 litigation. In 1992, Con Mutual applied to change the use of its 2.5855 c.f.s. of Priority

---

1. The Consolidated Mutual Water Company ("Con Mutual"), a plaintiff below, is not a party to this appeal. *FHL I,* 975 P.2d at 193 n. 1.

2. A measure of the flow of water that may be diverted from the stream.

3. A measure of the volume of water.

12 water from agricultural to municipal use. Con Mutual's then-existing decree, like Golden's in the instant case, contained no express volumetric limitation. Golden objected to Con Mutual's proposed change and argued the change would injure Golden unless the court imposed an acre-foot per year volumetric limitation.

To determine Con Mutual's entitlement to Priority 12 water, the water court looked to Golden's entitlement pursuant to the 1960s change proceedings. To this end, Golden's expert water engineer, Gary Thompson, relied on Wheeler's calculations prepared for the 1960s proceedings to create a table and testified to the historical consumptive use of Priority 12 water. Thompson fixed the average total annual consumptive use of Priority 12 water at 411 acre-feet. Thompson testified that, although Golden's interest under the 1960s decrees was not subject to express volumetric limitations, Con Mutual's share of Priority 12 could nevertheless be calculated by subtracting the acre-footage of water transferred to Golden in the 1960s proceedings. Thompson concluded Con Mutual was entitled to consume an average of 124 acre-feet of water per year and thus implicitly fixed Golden's share of Priority 12 at an average of 278 acre-feet per year.[4] The water court imposed a volumetric limitation on Con Mutual's decree to prevent injury to Golden and other users.

## 2. The Current Litigation

In 1995, Appellants filed a complaint for declaratory judgment, interpretation of decrees, and permanent injunction. Pointing to proceedings giving and decrees governing Priority 12 water rights of Golden and Con Mutual, Appellants alleged Golden had impermissibly expanded its use of Priority 12.

Appellants' complaint requested the water court to interpret and declare the 1960s decrees subject to implied volumetric limitations restricting Golden's municipal use of its interest in Priority 12 to its historical consumptive use, 278 acre-feet. In this regard, Appellants made two requests. First, Appel-

lants requested the water court to declare that the average volume of water historically diverted under Golden's interest in Priority 12 was 428 acre-feet, of which 278 acre-feet was historically consumed.

Second, Appellants' complaint requested the water court to restrain Golden from enlarging its municipal use over the historical use of Priority 12. Specifically, it requested the water court to permanently enjoin Golden from diverting water under the 1960s decrees in excess of: (a) an average annual diversion of 428 acre-feet and 278 acre-feet of consumptive use, and (b) a maximum annual diversion of 535 acre-feet and 348 acre-feet of consumptive use.

The complaint made no reference to or request regarding Golden's lawn acreage irrigation.

Golden moved to dismiss Appellants' claim seeking volumetric limitations on its decrees on the grounds that such modifications were barred by principles of claim and issue preclusion based on the 1960s proceedings and decrees.

Appellants responded and filed a cross-motion for partial summary judgment under the doctrines of issue preclusion and judicial estoppel. Appellants maintained Gary Thompson's testimony in the Con Mutual litigation bound Golden to the specific acre-footage limitations. Because the acre-footage limitations associated with Golden's decrees were actually and necessarily decided in the 1993 litigation, Appellants asserted issue preclusion prevented Golden from relitigating this issue. Appellants further alleged Golden was judicially estopped from arguing that Thompson's testimony in the 1993 Con Mutual litigation did not govern the terms of its decrees.

The water court denied both motions. The water court held Appellants' claims were not barred by claim preclusion because the 1960s decrees implicitly limited the amount of water Golden could divert thereunder and had not been previously litigated. As to Appellants' cross-motion for summary judgment,

4. Nine acre-feet were attributable to small parcel owners of Priority 12. Thus, according to Thompson's testimony, Golden's share was equal

to 411 acre-feet less 133 acre-feet, or 278 acre-feet.

the water court concluded Gary Thompson's testimony in the 1993 litigation did not judicially estop Golden from arguing that its decrees should not be modified to reflect volumetric limitations because the cases were not the same or related. In this regard, the water court stated the facts at issue in this case were sufficiently different to prevent Golden from being legally bound to a volumetric limitation determined in Con Mutual, Golden could not be bound by the factual determinations made with regard to historical consumptive use in Con Mutual because its rights were not at issue, and Golden did not "prevail" in Con Mutual. The water court subsequently denied Golden's motion for reconsideration.

Trial began in May 1997. At trial, Appellants advanced three claims of injury to support their request for declaratory relief. First, as specifically stated in its pre-trial motions, Appellants argued Golden impermissibly enlarged its use beyond the extent of its decreed rights because Golden was consuming water in excess of the historical consumptive use, expressed in acre-feet. Second, Appellants argued Golden impermissibly enlarged its use of Priority 12 water by changing its use patterns, thereby altering its right from a "peaking flow right," used only to satisfy municipal demand during the peak summer months of lawn irrigation, to a "base flow right," used to satisfy municipal demand outside the summer months. Third, Appellants introduced the argument that Golden enlarged its use by increasing the acreage of lawns irrigated with its Priority 12 water.

At the close of Appellants' evidence, Golden moved to dismiss the complaint under C.R.C.P. 41(b)(1) on the basis that Appellants showed no right to relief. Without determining facts, the water court made a "limited finding" that Appellants presented a "prima facie case" in support of the action, including the judicial estoppel claim. On this basis, the water court denied Golden's motion.

After two weeks of trial, however, the water court dismissed Appellants' complaint in its entirety. The water court held the 1960s decrees, and thus Golden, were not subject to implied volumetric limitations and that historical consumptive use was fully litigated in the 1960s proceedings. It also rejected Appellants' attempt to use the doctrines of issue preclusion and judicial estoppel to bind Golden to Thompson's testimony in the 1993 Con Mutual case. In addition, the water court rejected Appellants' claim that Golden enlarged its consumptive use of Priority 12 by changing the right from a peaking flow right to a base flow right. The water court did not, however, issue a ruling as to whether Golden enlarged its consumptive use based on increased lawn acreage under irrigation.

On appeal, in *FHL I*, we affirmed the water court's holdings that (1) Appellants were precluded from seeking a modification of Golden's water rights decrees so as to add volumetric limitations; (2) Golden was not precluded or judicially estopped from asserting that its water rights decrees contained no volumetric limitations; and (3) the owners were not precluded from asserting claims of enlarged use. 975 P.2d at 204. However, we remanded to the water court for a determination of whether Golden impermissibly expanded its use of Priority 12 water by increasing the amount of Priority 12 water it applied to lawn irrigation or increasing the number of acres it irrigated with Priority 12 water. *Id.*

On remand, the water court ruled that Golden did not impermissibly expand its use of Priority 12 water, but made no ruling regarding the number of acres irrigated.

On subsequent appeal, in *FHL II*, we held that (1) Golden impermissibly expanded its use of Priority 12 water by irrigating more than 225 acres of lawn, approximately 267, in 1994, but (2) it diverted less than 53% of its Priority 12 water, or 900 acre-feet, to lawn irrigation during the season from May 1 to October 31 and thus did not expand its use in that respect. 44 P.3d at 244. We remanded the case to the water court "with instructions that it enter an injunction prohibiting Golden from irrigating more than 225 acres of lawn with its Priority 12 water or from applying more than 900 acre-feet of Priority 12 water to lawn irrigation." *Id.* at 256.

## B. Award of Attorney Fees, Costs and Moratory Interest

After *FHL I*, but before *FHL II*, Golden moved for costs as the prevailing party under C.R.C.P. 54(d) and section 13–51–114, C.R.S. (2004), of the Uniform Declaratory Judgments Law ("UDJL"). Golden also moved for its attorney fees under subsection 13–17–102(4), C.R.S. (2004). In its initial fee order, the water court determined Golden was entitled to an award of its costs as the prevailing party and that Appellants' complaint was "substantially groundless" because the claims were not substantiated with credible evidence and Golden was therefore entitled to the award of all its attorney fees incurred prior to June 25, 1996. The court limited fees based on Golden's failure to mitigate its costs because it did not file a motion for summary judgment on the judicial estoppel claim. It also ruled Golden was entitled to its costs against all Appellants, including the municipal entities, and called for a hearing on the reasonableness of costs and fees.

Appellants sought a stay of the fees and costs proceedings pending the *FHL II* appeal. The water court denied the stay. Appellants sought reconsideration on the grounds, in part, that the finding that their complaint was "substantially groundless" was inconsistent with the water court's denial of Golden's Rule 41(b)(1) motion at the close of the Appellants' evidence at trial.

The water court subsequently determined that only Appellants' judicial estoppel claim had been groundless and limited the award of attorney fees thereto. Golden sought costs, attorney fees and moratory interest on both the costs and attorney fees.

Municipal appellants, the cities of Arvada, Thornton, Northglenn, and Westminster, filed motions seeking a holding that the municipal appellants were not subject to the award of costs as a matter of law. The water court rejected this argument. Appellants also filed a Motion for Determination of Question of Law challenging Golden's claim

of moratory interest. The water court granted the motion, concluding "as a matter of law, Golden is not entitled to moratory interest with respect to either its attorney fee award or any award or costs." Accordingly, prior to *FHL II*, the water court held that Golden was entitled to attorney fees and costs, but not moratory interest.

Following this court's decision in *FHL II*, Appellants sought to vacate the award of costs on the grounds that, since this court found Golden had impermissibly expanded its consumptive use of Priority 12 and directed an injunction against that expansion, Appellants were the prevailing parties. The water court rejected this argument, holding that the remand issue (whether Golden expanded its use of Priority 12 by increasing the amount of water applied to lawn irrigation or increasing the number of acres) had been "collateral to the issues raised by the complaint," and Appellants had "not received the benefit expressly sought in the complaint." Consequently, it did not change its determination that Golden was entitled to the award of costs as the prevailing party. The water court determined, however, that costs would not be awarded to either party with respect to the remand issue.

The water court held a four-day costs and fees hearing to establish the reasonable amount thereof to be awarded Golden. The court reduced the attorney fees claimed by Golden from $83,933.62 to $75,183.62 and reduced the costs claimed by Golden from $137,819.02 to $86,193.52. Finally, the court also awarded moratory interest to Golden in the amount of $70,326.93.[5] The water court did not refer to, and did not distinguish, its prior written order holding that moratory interest could not be awarded in this case as a matter of law. Instead, it stated that it "may award moratory interest in its sound discretion" and that the delay in reducing Golden's claim to judgment stemmed from Appellants' request that the water court defer ruling on the award of costs and fees pending the appeal in *FHL II*.

---

5. The water court originally miscalculated the moratory interest award and entered interest in the amount of $240,608.69. Pursuant to requests by all parties, the water court corrected this calculation error and reduced the time period during which moratory interest was awarded to the period between August 17, 1997 and April 25, 2002. The resulting amount of moratory interest awarded was accordingly reduced to $70,326.93.

As a result of these orders, Golden has been awarded costs in the amount of $86,193.52, attorney fees on the judicial estoppel claim in the amount of $75,183.62, and moratory interest in the amount of $70,326.93, for a total judgment of $231,704.07.

## II. Attorney Fees

Appellants contend the water court erred in awarding attorney fees to Golden under subsection 13–17–102(4) on the basis that its judicial estoppel claim was substantially groundless. Appellants also argue that, even if Golden is entitled to attorney fees on the judicial estoppel claim, the water court abused its discretion in awarding fees based on the evidence presented by Golden.

### A. Groundlessness of Judicial Estoppel Claim

■ One Justice does not participate in this case. The remaining Justices are equally divided on the issue of whether Appellants' judicial estoppel claim was groundless. Chief Justice Mullarkey and Justices Martinez and Bender would hold that it was an appropriate exercise of discretion for the water court to award attorney fees. Justices Rice, Kourlis and Coats would hold that the water court abused its discretion by awarding attorney fees. Thus, by operation of C.A.R. 35(e), the judgment of the water court awarding attorney fees is affirmed.

### B. Reasonableness of Attorney Fees

■ Appellants argue that even if the judicial estoppel claim was groundless, the water court abused its discretion in awarding attorney fees based on Golden's testimony. Specifically, Appellants assert the evidence was insufficient to identify the fees incurred for work useful only on the judicial estoppel claim. To the contrary, the record supports the amount of attorney fees and is affirmed.

■ The determination of what constitutes reasonable attorney fees "is a question of fact for the trial court and will not be disturbed on review unless it is patently erroneous and unsupported by the evidence." *Am. Water*

*Dev., Inc. v. City of Alamosa,* 874 P.2d 352, 384 (Colo.1994) (hereinafter "*AWDI*").

■ Counsel is not required "to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437 n. 12, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The movant must only establish a reasonable proration of attorney fees incurred relative to the defense of a frivolous or groundless claim. *See Fountain v. Mojo,* 687 P.2d 496, 501 (Colo. App.1984). Allocations made after the fact may provide support for a court's award determinations. *AWDI* at 384. In a number of other cases, reconstructed time records have been held adequate to establish time expended. *Id.* (citations omitted).

The water court awarded attorney fees to Golden on all of Appellants' claims for the period from September 29, 1995 until June 25, 1996 based on a determination that the claims were groundless, but denied Golden any attorney fees after June 25, 1996, under the theory that Golden should have mitigated its damages by filing for summary judgment. The court amended its original order and limited Golden to an award of attorney fees only on the issue of judicial estoppel.

Appellants stipulated that the hourly rates charged by Golden's attorneys were reasonable. At the fees and costs hearing, the principal issue was the proper allocation of Golden's attorney fees to the judicial estoppel issue. Golden's time records did not break out on a day-by-day basis how much time was spent on the judicial estoppel issue itself but instead showed general entries: prepare for trial, prepare witnesses, prepare briefs. The entries did not specify particular issues such as collateral or judicial estoppel. Further, the water court's ruling with respect to the allocation of fees on judicial estoppel came many years after the trial. As a result, Golden reconstructed its time allocations relying on materials in addition to the time records.

Golden presented evidence that Witwer was hired solely to be the expert on the judicial estoppel claim because he was the principal attorney representing Golden in the

Con Mutual proceedings and therefore had knowledge of the case essential to the presentation of the defense to the judicial estoppel claim. Thus, Golden conservatively estimated that about two-thirds, or $29,000, of Witwer's time be allocated to judicial estoppel.

Golden also presented evidence showing that much of the factual testimony at trial was driven by the judicial estoppel claim; the need to show why Golden's position on Con Mutual was not inconsistent with its position with respect to the 1960s decrees; why the consumptive-use approach utilized by Con Mutual was not inconsistent with the flow rate decree Golden was defending; and to provide the background and explain what both positions were.

The evidence also supports that Golden devoted at least 25 percent of its time to the issue of judicial estoppel. Porzak reviewed the daily time records in this matter and determined, based on those records and his general knowledge of this matter, that at least 25 percent of the fees charged were related to the judicial estoppel claim. Porzak also testified regarding his preparation of the invoices, his receipt of payment for the invoices and his views of the proper allocation of time to the judicial estoppel claim. Consequently, at least 25 percent, or $55,000, of Golden's principal attorneys' time related to the Porzak firm. In addition, Golden called Dan Hartman, Golden's Public Director, who testified regarding the importance of Priority 12 water to Golden's policy with respect to aggressively defending water rights against these kinds of challenges, and his own perceptions of the attorneys' percentages of the judicial estoppel claim. He also established the total amount of attorney fees and costs paid by Golden in this matter through the review of the record and invoices he received.

Finally, Golden examined Ray Petros, a practicing water attorney in the state for nearly 25 years, regarding the proper allocation from a number of perspectives, including an attempt to say how much he thought would have been reasonable to spend with respect to the judicial estoppel claim. He conducted attorney interviews and reviewed a number of the transcripts and expert reports.

In sum, all three of Golden's trial attorneys in the underlying matter testified that they reviewed their time records and determined that the above allocations were fair and reasonable, if not conservative. All three were extensively cross-examined by Appellants on this issue.

Hence, the record supports that the fees were reasonable and necessary.

Accordingly, the water court's award of attorney fees is affirmed.

### III. Costs

Appellants contend the water court's cost award to Golden is erroneous and contest three aspects of the award. First, they argue that they, and not Golden, are the prevailing parties under C.R.C.P. 54(d). Second, Appellants argue that, even if Golden is the prevailing party, Golden presented insufficient evidence to establish costs. Third, the municipal appellants, the cities of Westminster, Thornton, Northglenn and Arvada, argue that neither Rule 54(d) nor section 13–51–114 authorize courts to enter cost awards against the State or its political subdivisions. We conclude the water court's finding that Golden was the prevailing party is supported by the record. Golden also presented sufficient evidence regarding costs to support the amount of the award. We agree with the municipal appellants, however, that the award of costs against them were not permitted by law.

C.R.C.P. 54(d) addresses the award of costs generally in judicial proceedings and provides:

> Costs. Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the state of Colorado, its officers or agencies, shall be imposed only to the extent permitted by law.

C.R.C.P. 54(d); *Waters v. Dist. Ct.*, 935 P.2d 981, 990 (Colo.1997).

■ An award of costs under Rule 54(d) rests in the sound discretion of the water court and will be disturbed only if it is manifestly arbitrary, unreasonable, or unfair. *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230–31 (Colo.2004); *Fort Morgan Reservoir & Irrigation Co. v. Groundwater Appropriators of South Platte River Basin, Inc.*, 85 P.3d 536, 541 (Colo.2004).

## A. Prevailing Party

Appellants first argue the water court erred in awarding costs to Golden as the prevailing party under C.R.C.P. 54(d) because, consistent with this court's ruling in *FHL II*, Appellants, not Golden, are the prevailing parties. We do not agree.

■ C.R.C.P. 54(d) permits a water court to award costs to the prevailing party. *Fort Morgan Reservoir & Irrigation Co.*, 85 P.3d at 541. To "prevail" under Rule 54(d), a party must prevail on a significant, but not necessarily central, issue in the litigation and derive some of the benefits sought by the litigation. *Fort Morgan Reservoir & Irrigation Co.*, 85 P.3d at 541. The number of claims on which a party prevails or the amount awarded for those claims does not determine who is the prevailing party. *Archer*, 90 P.3d at 231 (internal citations omitted). Where a case involves many claims, some of which are successful and some of which are not, the water court has the sole discretion to determine which party, if any, is the prevailing party and whether costs should be awarded. *Fort Morgan Reservoir & Irrigation Co.*, 85 P.3d at 541. Moreover, where "each of the parties can arguably be viewed as having prevailed in part, the award of costs in such a situation is committed to the sole discretion of the trial court." *Id.* (quoting *Mackall v. Jalisco Int'l, Inc.*, 28 P.3d 975, 977 (Colo.App.2001)).

■ Here, after this court's decision in *FHL II*, the water court concluded that, although Golden's counterclaims were dismissed, Golden was entitled to an award of costs for work done on the issues of implied volumetric limitations, collateral estoppel, judicial estoppel, and changed municipal use patterns. The water court also concluded that, although Appellants successfully dem-

onstrated an impermissible expansion of irrigated acreage, they were not a prevailing party. As a result, the water court found each side should bear its own costs for work done exclusively on the expansion of irrigated acreage claim. These conclusions enjoy record support.

The principal relief sought by Appellants was to limit Golden's diversions of Priority 12 to 428 acre-feet a year for all uses, of which 278 could be consumed. Appellants sought, in their original complaint and at trial, a declaration that the 1960s decrees limited Golden's diversions to an average annual diversion of 428 acre-feet and 278 acre-feet of consumptive use as well as a maximum annual diversion of 535 acre-feet and 348 acre-feet of consumptive use. Likewise, Appellants also sought to enjoin Golden from diverting more than an average annual 428 acre-feet and 278 acre-feet of consumptive use and a maximum annual diversion of 535 acre-feet and 348 acre-feet of consumptive use. In support of its request for historical consumptive use limits, Appellants asserted Golden was collaterally estopped from arguing that the acre-footage limitations associated with Golden's decrees were actually and necessarily decided in the 1993 litigation and therefore precluded from relitigating the issue. *FHL I*, 975 P.2d at 195. Appellants also asserted Golden was judicially estopped from arguing that Thompson's testimony in the 1993 Con Mutual litigation did not govern the terms of the decrees and therefore limited to its historical consumptive use, 278 acre-feet. *Id.* Appellants also argued Golden enlarged its use of Priority 12 by altering its traditional pattern of water usage from that of a peaking flow right to a base flow right.

The water court held, and we agreed, that the 1960s decrees were not subject to implied historical consumptive use limitations. *FHL I* at 197. The water court also found, and we agreed, that the doctrine of issue preclusion was unavailable to Appellants in this case. *Id.* at 201. In addition, the water court concluded, and we agreed, that Golden did not take inconsistent positions in the Con Mutual case and the present litigation and Appellants' judicial estoppel argument must be rejected. *Id.* at 202. Finally, the water

court found, and we agreed, that Golden had not altered its traditional pattern of water usage from a peaking flow right to a base flow right. *Id.* at 203. Accordingly, the water court denied Appellants' related request for injunctive relief. We affirmed. *Id.*

Appellants also argued at trial-but not in its complaint, pre-trial motions, pre-trial disclosures, expert reports, or pre-trial briefing-that Golden enlarged its use by increasing the percentage of Priority 12 water used to irrigate lawns. Appellants dedicated relatively little trial testimony related to this claim. The water court made no findings or rulings with regard to this claim and we remanded to the water court for a determination of the validity of this claim of injury. *Id.* at 203–04.

On remand, the water court rejected that Golden impermissibly expanded its use because of the number of acres irrigated with Priority 12. *FHL II*, 44 P.3d at 252. We agreed in part, concluding Golden applied only about 28 percent of its entitlement to lawn irrigation and therefore did not exceed the permissible percentage of water applied to lawn irrigation under the decrees (53 percent). *Id.* at 255. On the single issue of whether Golden expanded its use of Priority 12 by irrigating more than 225 acres of lawn, we reversed, finding that Golden irrigated 267 acres of lawn in 1994. *Id.* at 253.

In sum, Appellants sought a declaration that Golden's 1960s decrees were subject to implied historical consumptive use limitations. The water court found, and we agreed, that the decrees were not subject to any such limit. Appellants sought an injunction restraining Golden from diverting more than its historical consumptive use. The water court found, and we agreed, that there was no basis on which to enter this requested injunction. Appellants asserted Golden was collaterally estopped from arguing the Con Mutual litigation did not decide the limits associated with Golden's decree. The water court found, and we agreed, that this doctrine was unavailable to Appellants. Appellants asserted Golden was judicially estopped from claiming its Priority 12 decrees were not subject to historical consumptive use limits as testified to in the Con Mutual case.

The water court found, and we agreed, that the judicial estoppel argument must be rejected. Appellants argued Golden enlarged its use of Priority 12 by changing its pattern of water usage from a peaking flow right to a base flow right. The water court found, and we agreed, that Golden had not altered its pattern of water usage in this respect. Only on the issue of whether Golden enlarged its decreed use by increasing the percentage of Priority 12 water used to irrigate lawns-an issue not raised in Appellants' original pleadings-did we agree with Appellants.

The pre-trial dismissal of Golden's counterclaims notwithstanding, the record supports the water court's conclusion that Golden, not Appellants, prevailed. The water court properly took into account the history of this litigation and the relative time devoted to various claims in determining that Golden was the prevailing party. Accordingly, the water court did not abuse its discretion in concluding that Golden was a prevailing party entitled to an award of costs under Rule 54(d).

### B. Sufficiency of the Evidence

■ Second, Appellants argue Golden presented insufficient evidence to establish the reasonableness of the costs.

■ A water court is required to review the evidence presented as to costs and "arrive at a fair conclusion of their reasonable worth." *AWDI*, 874 P.2d at 390. Absent a specific prohibition in the statutes or rules, the court has discretion to award any reasonable costs. *Id.* Section 13–16–122, C.R.S. (2004), sets forth a non-exclusive list of items that may be included in a cost request. This list includes: witness fees, expert witness fees, attorney fees as authorized by statute or court rule, and any item authorized by statute to be included as part of costs. § 13–16–122.

The record supports the water court's cost award of $86,193.52. With regard to costs for Thompson, Golden submitted substantial evidence supporting the nature and reasonableness of Thompson's fees, including detailed monthly invoices, Petros' testimony that Thompson's work and bills were reason-

able, and the testimony of Hartman and Porzak. The other cost awards were similarly supported; Golden introduced invoices and provided a table showing costs claimed by Golden, by category, including the date each cost was incurred. Finally, the water court reduced the amount requested, with record support, from $137,819.01 to $86,193.52 by (a) disallowing $6,875.00 in expert witness fees charged by Jeris Danielson, (b) disallowing Golden staff time in the amount of $9,750.56, and (c) crediting against Golden's costs $35,000 received by Golden from Con Mutual as a result of an earlier settlement.

Because the record supports the cost award, we conclude the water court did not abuse its discretion.

### C. Costs Against Municipalities

Third, municipal appellants, the cities of Westminster, Thornton, Northglenn and Arvada, argue the water court erroneously awarded costs against the municipalities pursuant to C.R.C.P. 54(d) and section 13–51–114, C.R.S. (2004), of the UDJL. We agree.

■ Costs may be imposed against the state of Colorado and its political subdivisions "only to the extent permitted by law." [6] C.R.C.P. 54(d).

The parties assume, and we agree, that the municipal appellants are political subdivisions of the state.[7] Therefore, a cost award may be imposed against the municipal appellants only to the extent permitted by law.

■ Here, the water court found that the UDJL's general cost provision, section 13–51–114, authorizes cost awards against state entities. Section 13–51–114 provides: "In any proceeding under this article, the court may make such award of costs as may seem

equitable and just." The water court held that this general cost provision constitutes an independent and express legislative authorization to award costs against political subdivisions of the state, as required by Rule 54(d).

■ We interpret section 13–51–114 of the UDJL de novo. *See United Airlines, Inc. v. Indus. Claim Appeals Office*, 993 P.2d 1152 (Colo.2000). To be "permitted by law," the legislature must intend to authorize courts to impose costs against the State or its political subdivisions. *See Martin v. People*, 27 P.3d 846, 851 (Colo.2001) (in interpreting a statute, appellate courts must effectuate the intent of General Assembly in enacting it). To do so, we must read and consider the statute as a whole "to give consistent, harmonious, and sensible effect to all of its parts." *Thurman v. Tafoya*, 895 P.2d 1050, 1055 (Colo.1995).

We have resolved that "costs may be awarded against the State where there is an express legislative provision for costs against the State or where the State is in the position of a party litigant against whom costs are otherwise legislatively authorized to be awarded." *Waters*, 935 P.2d at 990. However, that a State is in the position of a party litigant is not, by itself, sufficient to assess costs against it. Rather, absent an express provision, there must also exist a "substantive legislative authorization" tantamount to an express provision indicating a specific and clear legislative intent to assess costs against public entities. *See id.*

■ For a general cost provision, like the one at issue here, to constitute substantive legislation authorizing costs the provision must bear a precise nexus to the public entity to be charged.[8] For example, in

---

6. The term "costs" does not include expenses involved or fees authorized in preparing appeals, the record on appeal, or any transcript of evidence or testimony. *See Bennett Bear Creek Farm Water & Sanitation Dist. v. City & County of Denver*, 928 P.2d 1254, 1273 n. 31 (Colo.1996) (quoting Chief Justice Directive 85–21).

7. The municipalities of Westminster, Thornton, Northglenn, Arvada and Golden are all home-rule cities, which are political subdivisions of the state. *See City & County of Denver v. Sweet*, 138 Colo. 41, 48, 329 P.2d 441, 445 (1958) ("home-

rule cities can be only an arm or branch of the state with delegated power").

8. A statutory scheme containing neither an express nor general cost provision must likewise contain substantive provisions specifying the legislature's clear intent to authorize cost assessments against public entities. *See Waters*, 935 P.2d at 990; *see also Lee v. Colo. Dept. of Health*, 718 P.2d 221, 222 (Colo.1986) (under the Governmental Immunity Act, sections 24–10–101 to – 118, C.R.S. (2004), a public entity may be taxed costs in connection with a judgment against it in

*Branch v. Colo. Dep't of Corr.,* 89 P.3d 496, 498 (Colo.App.2003), the court of appeals recognized the General Assembly's intent to authorize such costs in the absence of an express provision where the general cost provision, section 13–16–111, C.R.S. (2004), was necessarily tied and applicable to public entities. Specifically, the court of appeals determined section 13–16–111 authorizes courts to assess costs against public entities in C.R.C.P. 106(a)(4) actions. The plain language of section 13–16–111, a general cost provision, expressly authorizes an award of costs against state entities:

> Recovery of costs of suit. A plaintiff who obtains judgment or an award of execution in an action brought under subsection (4) or (5) of rule 106(a), C.R.C.P. shall recover his costs of suit. The defendant shall recover his costs if the action brought under subsection (4) or (5) of rule 106(a), C.R.C.P., is dismissed pursuant to rule 41, C.R.C.P.

*See Branch,* 89 P.3d at 498. The court of appeals observed this section applies specifically to C.R.C.P. 106(a) actions, brought only against a governmental body exercising judicial or quasi-judicial functions, which necessarily includes the state. *Id.; see also Rossmiller v. Romero,* 625 P.2d 1029, 1030 (Colo. 1981) (in a C.R.C.P. 106(a)(4) action, the defendant is typically a municipal or county authority).

Thus, "[g]iven the state's significant role in C.R.C.P. 106(a)(4) litigation," the legislature evinced clearly its intent to authorize costs against state entities. *Branch,* 89 P.3d at 498; *see also Carney v. Civil Serv. Comm'n,* 30 P.3d 861, 867 (Colo.App.2001) (section 13–16–111 authorizes a cost award against municipal corporations in C.R.C.P. 106(a)(4) actions). Hence, section 13–16–111, because of its specific reference to C.R.C.P. 106(a)(4), bears a clear nexus to the state to indicate the General Assembly's intent to authorize cost awards against its entities.

Likewise, in *Barr v. Game, Fish & Parks Comm'n,* 30 Colo.App. 482, 489–90, 497 P.2d 340, 344 (1972), the court of appeals observed that the General Assembly had enacted special legislation authorizing initiation of certain types of civil actions against the Colorado Game, Fish and Parks Commission and providing that in those actions the Commission would be subject to the rules of law applicable to private litigants. *See also Cent. Colo. Water Conservancy Dist. v. Simpson,* 877 P.2d 335, 349 (Colo.1994). In so doing, the General Assembly indicated its clear intent to authorize assessments against state entities by creating a specific nexus between the Commission and these types of civil actions. *See Simpson,* 877 P.2d at 349.

In contrast, it has been concluded the legislature did not intend to authorize courts to assess costs against state entities where a general cost provision bears an insufficiently clear nexus to state entities. For example, in *Smith v. Furlong,* 976 P.2d 889, 890 (Colo. App.1999), the court of appeals found that section 13–16–104, C.R.S. (2004), only generally provides for a cost award. Section 13–16–104 contains no reference to an action involving a state entity:

> If any person sues in any court of this state in any action, real, personal, or mixed, or upon any statute for any offense or wrong immediately personal to the plaintiff and recovers any debt or damages in such action, then the plaintiff or demandant shall have judgment to recover against the defendant his costs to be taxed; and the same shall be recovered, together with the debt or damages, by execution, except in the cases mentioned in this article.

The court of appeals found this section does not indicate any intent on the part of the General Assembly to authorize costs against the state, its officers, or its agencies. *Furlong,* 976 P.2d at 890. Thus, even though the underlying action was brought pursuant to C.R.C.P. 106(a)(4), the court denied a cost award sought against a state defendant under section 13–16–104. *Id.* In short, the provision bore little more than an imagined connection to public entities.

a tort action for damages); *Nguyen v. Regional Transportation Dist.,* 987 P.2d 933, 935–36 (Colo. App.1999) (Governmental Immunity Act specifi-cally contemplates that a state entity will be treated as if it were a private person).

We have also denied costs against a water conservancy district, a political subdivision of the state, under section 13–51–114 in a declaratory action because there existed no authority indicating legislative authorization of such costs. *Simpson*, 877 P.2d at 349. We cited *Simpson* positively in *Waters*, implicitly concluding that section 13–51–114 did not constitute a "substantive legislative provision." 935 P.2d at 990.

In sum, Rule 54(d) requires an explicit legislative provision that specifically and clearly indicates the intent of the legislature to authorize costs against a public entity.

■ With this inquiry in mind, we turn to the instant case, conclude that section 13–51–114 does not evince a legislative intent to authorize cost awards against public entities, and affirm the result reached in *Simpson*, 877 P.2d at 349. As noted above, section 13–51–114 permits a court to award costs in any proceeding under the UDJL as may be equitable and just. Thus, it neither explicitly includes nor explicitly excludes a cost award against state entities. Therefore, we look to the statutory scheme itself to determine legislative intent.

The purpose of a declaratory judgment proceeding is remedial; "its purpose is to settle and afford relief from uncertainty and insecurity with regard to rights, status, and other legal relations." § 13–51–102, C.R.S. (2004); *see also Mt. Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 240 (Colo.1984). These actions may, but do not necessarily, affect a private party's legal rights with regard to a state entity. In addition, section 13–51–114 contains no specific cross-reference to an action brought only against a municipal, county, or other state authority. *Cf. Branch*, 89 P.3d at 498 (section 13–16–111 contains a specific reference to C.R.C.P. 106(a) actions brought only against public entities). Rather, it applies broadly to both private and public parties and private and public interests. "Person" under the UDJL includes "person, partnership, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever." § 13–51–103, C.R.S. (2004). A person "interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise" may obtain a declaration under the law. § 13–51–106, C.R.S. (2004). As a result, a state entity will not necessarily be a party litigant in an action· brought under the UDJL. Even if a state entity is a party litigant, nothing in the UDJL waives sovereign immunity in declaratory actions or expressly provides that public entities will be treated like other private persons in litigation. *See Nguyen*, 987 P.2d at 935–36.

Consequently, section 13–51–114, bears an insufficiently clear nexus to the state entity as party litigant to conclude the General Assembly intended to authorize cost awards against state entities. Hence, we hold section 13–51–114 does not authorize such costs. Accordingly, the water court erred in awarding costs against the municipal appellants. The award of costs against the private entities, however, was authorized by Rule 54(d) and the cost award against them is affirmed.

## IV. Moratory Interest

Appellants next contend the water court abused its discretion in awarding moratory interest on costs and attorney fees. We agree.

■ Interest, in the common acceptance of the term, "is the compensation allowed by law, or fixed by the parties, for the use, detention, or forbearance of money or its equivalent." *Stone v. Currigan*, 138 Colo. 442, 445, 334 P.2d 740, 741 (1959) (internal quotations omitted). Early Colorado jurisprudence emphasized that interest was a creature of statute and, in the absence of contract, recoverable only in cases enumerated in the relevant statute. *See Bankers Trust Co. v. Int'l Trust Co.*, 108 Colo. 15, 33, 113 P.2d 656, 665 (1941).

Nevertheless, even where interest was not recoverable under statute, many courts distinguished between statutory interest and interest as damages-or "moratory" interest-and allowed the equivalent of interest in the way of damages for the tortious taking and detention of money or property. *Id.* At com-

mon law, the doctrine of moratory interest relied on the concept of interest as damages and unjust enrichment as a basis for awarding common law interest rather than statutory interest. Gregory B. Cairns and John C. Tredennick, *Collecting Pre- and Post–Judgment Interest: A Primer*, 15 Colo. Law. 753, 753 (1986). Thus, this prejudgment interest was in the nature of another item of compensatory damages. Its award was permitted as an element of damages in actions for breach of contract or in actions for tort for the detention and use of money. *See Davis Cattle Co., Inc. v. Great W. Sugar Co.*, 393 F.Supp. 1165, 1186 (D.Colo.1975) (discussing annotations and Colorado case law permitting moratory interest); *see also Farnworth v. Jensen*, 117 Utah 494, 217 P.2d 571, 575 (1950).

Colorado has since codified the common law doctrine of moratory interest. Prejudgment interest as an element of damages in tort actions for personal injuries is specifically provided for by section 13–21–101(1), C.R.S. (2004). § 13–21–101(1); *see Allstate Ins. Co.*, 797 P.2d at 19.

Sections 5–12–102(1)–(3), C.R.S. (2004), codify the doctrine of moratory interest in contract and property damage cases. *See Schnacker v. State Farm Mut. Auto. Ins. Co.*, 843 P.2d 102, 104 (Colo.App.1993); *Great W. Sugar Co.*, 778 P.2d 272, 276 (Colo.App. 1989) (citing Audio Tape: Hearing on S.B. 463 before the House Business & Labor Committee, 52nd General Assembly, First Session, May 8, 1979 (statements of Sen. Cole) (on file with Colorado State Archives)); *cf. Bainbridge v. Douglas County Sch.*, 973 P.2d 684, 685 (Colo.App.1998) (section 5–12–102(4), C.R.S. (2004), serves as Colorado's general postjudgment statute); *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n of Colo.*, 67 P.3d 12 (Colo.2003) (postjudgment interest on appeals accrues from date of final judgment under section 5–12–106, C.R.S. 2004).

█ The right to recover prejudgment interest for damages other than those resulting from personal injuries is a matter of law determined under section 5–12–102. *Bennett v. Greeley Gas Co.*, 969 P.2d 754, 765–66 (Colo.App.1999); *cf.* § 13–21–101, C.R.S.

(2004). "In contract actions ... moratory interest, or prejudgment interest, is employed to compensate the plaintiff for the monetary losses sustained on wrongfully withheld money or property from the accrual of a claim for relief until entry of judgment." *Allstate Ins. Co.*, 797 P.2d at 18–19 (citing *Huffman v. Caterpillar Tractor Co.*, 645 F.Supp. 909, 913 (D.Colo.1986); *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 363–64 (Colo.1989); *Acme Delivery Serv., Inc. v. Samsonite Corp.*, 663 P.2d 621, 626 (Colo.1983); § 5–12–102, 2 C.R.S. (Supp. 1989)).

Colorado has awarded moratory interest on costs and attorney fees under limited circumstances. In *Hein Enters., Ltd. v. San Francisco Real Estate Investors*, 720 P.2d 975, 982 (Colo.App.1985), the court of appeals affirmed in part a trial court's award of moratory interest for certain consequential damages, i.e., attorney fees, court costs and expert witness fees, in a slander of title action. In upholding the award of common law moratory interest on the fees and costs (despite the concept's statutory codification), the court of appeals noted that "attorney fees and costs constitute special damages in a slander of title action." *Id.* at 981 (citation omitted). Thus, the award of interest on attorney fees and costs was merely an award of interest by way of the damages awarded on the claim for slander of title. *Id.* at 982.

As a preliminary matter, we note that Golden claimed common law moratory interest, not statutory interest under section 5–12–102. As noted above, the current version of section 5–12–102 codifies the doctrine of moratory interest and serves as a general prejudgment and postjudgment statute. *See Great W. Sugar Co.*, 778 P.2d at 276; *see also* § 5–12–104, C.R.S. (2004). We therefore address Golden's argument as if it sought prejudgment interest under section 5–12–102.

### 1. Costs

█ Costs are not damages, but a separate item of monetary relief, made to the successful party for his expenses in prosecuting or defending an action or a distinct pro-

ceeding within an action. Thus, the water court abused its discretion in awarding moratory interest on the cost award.

### 2. Attorney Fees

Attorney fees are neither costs nor damages, but a hybrid of both. Attorney fees are not considered actual damages because "they are not the legitimate consequences of the tort or breach of contract sued upon." *Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 941 (Colo.1993). When attorney fees are classified as costs, they are not treated as are ordinary costs, but as a separate item of monetary relief; even when they are treated as damages, they are often awarded and set by a court, even in a jury trial. *Id.* (quoting 1 Mary Frances Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 1.02 at 1–9 (1992)).

Classifying attorney fees as "costs" or "damages" for the purpose of moratory interest depends on the context of the case. *Cf. Ferrell*, 848 P.2d at 941. That is, such a determination is a fact- and context-sensitive one resting within the sound discretion of the trial court. *Ferrell*, 848 P.2d at 941. Such discretion should be guided by the nature of the requested attorney fees:

If attorney fees are part of the substance of a lawsuit, that is, if the fees being sought are "the legitimate consequences of the tort or breach of contract sued upon," such as in an insurance bad faith case, then such fees are clearly damages. If, on the other hand, attorney fees are ... simply the consequence of a contractual agreement to shift fees to a prevailing party, then they should be treated as "costs," at least where the fee-shifting contract provision is not the subject of the dispute between the parties and the contract itself is proven to exist. In such a case, it is within the sound discretion of the trial court to defer consideration of the entitlement to such fees, and the amount of the fees, until the merits of the case are decided.

*Id.* at 941–42 (internal citations and quotations omitted).

Here, the attorney fees were statutorily-authorized under section 13–17–102 to reimburse Golden for the expenses incurred in litigating a groundless claim. After Golden requested moratory interest on any award of attorney fees and costs, Appellants filed a motion asserting that, as a matter of law, moratory interest could not be awarded to Golden. Following briefing, the water court denied Golden's moratory interest claim in its entirety as a matter of law holding, with record support, that the attorney fees were analogous to costs:

The court concludes that as a matter of law Golden is not entitled to moratory interest with respect to either its attorney fee award or any award of costs. Moratory interest is awarded as damages in situations where a party has been damaged by the wrongful retention by another of money or property to which the party had an entitlement by contract, or otherwise, prior to the start of the litigation. The purpose of the interest award is to compensate the damaged party for the loss of the use of money or property from the date of loss until entry of final judgment. Thus, a precursor to an award of moratory interest is a claim for damages, a determination of liability for damages, and an award of damages.

In this instance, an award of moratory interest is not appropriate. First, the award of attorney fees to Golden pursuant to § 13–17–102 *et seq.* should be considered costs rather than damages. The fees were not claimed as damages in the underlying substantive proceeding, nor did Golden make any other claims giving rise to an award of damages. Further, the primary purpose of the fees award is to reimburse Golden for the expenses incurred litigating the frivolous or groundless claims. Second, Golden was not entitled to any attorney fees until the court made its final judgment responding to both parties' motions for reconsideration of the court's original costs and fees award. Thus, [Appellants] did not wrongfully withhold, or deprive Golden of the use of, any money to which Golden had an entitlement prior to the litigation. The fact that [Appellants] were active in the litigation subsequent to the court's initial order dismissing the [Appellants'] Complaint that extended the

length of this case is not relevant to the issue of moratory interest.

Eighteen months later, without reference to its original order denying prejudgment moratory interest, the water court reversed itself and held that Golden was entitled to moratory interest on both attorney fees and costs. The water court did not explain its holding, noting only that it may award moratory interest in its sound discretion and finding that the delay in reducing Golden's attorney fees and costs claims to judgment resulted from Appellants' request that the court defer ruling on those claims until after a pending appeal was finally resolved. The record does not support the interest award. Rather, Golden's counterclaims, for which damages could have been awarded, were dismissed prior to trial. As the water court originally pointed out, Golden made no other claim giving rise to an award of damages, the fees were not claimed as damages in the underlying substantive proceeding, and the fees were awarded to reimburse Golden for the expenses incurred litigating the groundless claim, not as damages to Golden for any underlying substantive claim. The delay in entering a judgment amount for the fees, unrelated to any damage claim or award, does not here warrant moratory interest. Instead, we agree with the water court's initial conclusion that the attorney fees were awarded as costs rather than damages: "The fees were not claimed as damages in the underlying substantive proceeding, nor did Golden make any other claims giving rise to an award of damages. Further, the primary purpose of the fees award is to reimburse Golden for the expenses incurred litigating the frivolous or groundless claims."

Because the record supports the water court's original characterization of the attorney fee award as analogous to costs, the water court did not explain its subsequent award of moratory interest and our own review of the record does not support that the fees were awarded as damages, we conclude the water court abused its discretion by awarding moratory interest. Accordingly, the award of interest is reversed.

## V. Conclusion

The water court's judgment that Appellants' judicial estoppel claim was groundless is affirmed by operation of law. We affirm the amount of the attorney fees award. We also affirm the costs award as to private appellants, but reverse as to municipal appellants. We reverse the moratory interest awarded on fees and costs. Accordingly, the judgment is affirmed in part and reversed in part and remanded with directions to award costs consistent with this judgment and opinion.

Justice HOBBS does not participate.